**UNITED STATES of America,**
**Appellee,**

v.

**Jacques Rene Henri VERMEULEN,**
**Defendant-Appellant.**

**No. 273, Docket 34498.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 1970.

Decided Dec. 31, 1970.

Phylis Skloot Bamberger, The Legal Aid Society, New York City, for defendant-appellant.

S. Michael Levin, Atty., Dept. of Justice, Washington, D. C. (Joseph F. Lynch, Sp. Atty., Dept. of Justice, Brooklyn, N. Y., on the brief), for appellee.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

MOORE, Circuit Judge:

The appellant, Jacques Rene Henri Vermeulen, bases his appeal upon claims (1) that the sentencing court failed to advise him that, on pleas of guilty to each of two counts, consecutive sentences could be imposed and (2) that the court imposed maximum sentences because he refused to cooperate by explaining other criminal acts disclosed in a pre-sentence report, thus allegedly violating his Fifth Amendment rights.

After waiving grand jury indictment, appellant pleaded guilty to two counts contained in an information which alleged violation of 18 U.S.C. §§ 1546 and 1001, respectively. Count one charged appellant with possession and use of a falsely made passport and visa known by him to be false and a wilful attempt to evade the immigration laws by appearing under an assumed name. Count two charged appellant with knowingly and wilfully using a false United States Customs declaration. Appellant, a French national, neither spoke nor understood the English language. An interpreter was employed.

*The Plea of Guilty*

When his guilty plea was accepted, appellant was represented by counsel, Edward Kelly. Prior to accepting the pleas, the following colloquy took place:

* Of the Third Circuit, sitting by designation.

"The Court: Do you know by pleading guilty to these two charges in count 1 and count 2 that you could be sentenced to pay a fine of $1000, up to $1000, or you could be sentenced to a jail term of up to five years for count 1 and also fined up to $1000, or a jail term up to five years or both on count 2?[1]

"The Defendant: Yes, your Honor."

\*　\*　\*　\*　\*　\*

"The Court: Has anybody led you to believe that they know what the sentence will be and led you to believe that the sentence would be less than the maximum on each of the two counts and that for that reason you are offering to plead guilty?

"The Defendant: Absolutely not \*　\*　\*"[2]

### The Sentence

Thereafter (and before a judge other than the judge accepting the guilty pleas) appellant appeared in court with Mr. Kelly, his counsel, another New York lawyer, Mr. Patrick McGinley, who appeared at the request of appellant's French lawyer, and Mr. Robert Hamilton, a lawyer and French interpreter, who with Mr. McGinley had previously conferred with appellant while he was in detention. Thus, to safeguard his interests appellant had his counsel Mr. Kelly, additional counsel to aid him and a lawyer-interpreter of his choice.

The court made available to appellant's counsel the presentence report, which had been supplemented by material furnished to the Probation Department by Mr. McGinley. Thereupon, Mr. Kelly spoke at some length, dealing with appellant's background, with the references in the probation report to possible involvement in narcotics and a bank check violation, and ended with a plea for leniency. The court then asked Mr. McGinley whether he wished to add to Mr. Kelly's remarks. Mr. McGinley said that he, Mr. Kelly and Mr. Hamilton "on many occasions upon visiting the defendant at West Street [place of detention] have urged him [appellant] if there are any circumstances that he is aware of and that he can only help his own cause by making those things known to the Court \*　\*　\*"[3] Appellant, however, "told us [them] time and again that there is nothing that he can bring to the Court's attention."[4]

The court was concerned over appellant's failure to offer any explanation as to why he had used various aliases in connection with his entries into this country. But these, as Mr. McGinley pointed out, and the Court acknowledged, were "not things with which this defendant has been charged and of which he stands convicted this morning."[5] Turning to the charges in this case, the Court advised counsel that appellant had "pleaded guilty to two counts, each of which carry a penalty of $2000 or five years or both \*　\*　\* [and] the other one is $10,000 or five years or both \*　\*　\*"[6]

Before the sentences of five years, consecutive, on each count were imposed, the Court commented that if appellant should find some way of cooperating "he might be able to get some help in the reduction of any term that he may be sent up for."[7] After sentence, under 18 U.S.C. § 4208(a) (2), the Court said that any reduction or eligibility for pa-

---

1. The penalty for conviction under 18 U.S.C. § 1546 is a fine of not more than $2,000, imprisonment or not more than five years, or both. The penalty for conviction under 18 U.S.C. § 1001 is a fine of not more than $10,000, imprisonment for not more than five years, or both.

   The contradiction between the monetary penalties provided by the respective statutes, as described for appellant's benefit by the two courts, is noted; it is, however, irrelevant to the disposition of the issues presented in this case.

2. Transcript at 6–7, in Government's Brief and Appendix at 17.

3. Appellant's Appendix at 16.

4. Id.

5. Id. at 15.

6. Id.

7. Id. at 17.

role would be "at such time as the Board of Parole may determine." [8]

### I.

The purpose of Rule 11( Fed. R.Crim.P.),[9] particularized by McCarthy v. United States, 394 U.S. 459, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969), is to assure defendants that they fully understand and can assess intelligently the risks attendant to pleading guilty prior to so doing. Durant v. United States, 410 F.2d 689, 692 (1st Cir. 1969). That purpose would be satisfied here if appellant was made aware of the maximum possible sentence that might be imposed. Stephen v. United States, 426 F.2d 257, 258 (5th Cir. 1970) (per curiam); Durant v. United States, *supra;* Combs v. United States, 391 F.2d 1017 (9th Cir. 1968) (per curiam); Harper v. United States, 368 F.2d 53, 55–56, n. 2 (10th Cir. 1966); Pilkington v. United States, 315 F.2d 204, 210 (4th Cir. 1963). The Court informed appellant that he could receive imprisonment and a fine on conviction of count one and "also" a similar prison sentence and a fine on conviction of count two. The Court did not use the words "consecutive" or "consecutively" during its colloquy with appellant, but the law does not require advance notice of proposed sentence so long as the Court employs reasonable means to determine a defendant's comprehension of the consequences of his plea. Hinds v. United States, 429 F.2d 1322, 1323 (9th Cir. 1970); United States v. Youpee, 419 F.2d 1340, 1344 (9th Cir. 1969); Munich v. United States, 337 F.2d 356, 359 (9th Cir. 1964); cf. McCarthy v. United States, *supra,* 394 U.S. at 467–468, n. 20, 89 S.Ct. 1166.

During the entire Rule 11 inquiry, appellant had counsel and a qualified interpreter present. Cf. Orr v. United States, 408 F.2d 1011, 1012 (6th Cir. 1969). Appellant does not allege that he, in fact, misunderstood the meaning of the Court's explanation. Indeed the record indicates that at all times appellant experienced no difficulty in following the course of the arraignment proceedings, in comprehending the Court's explanation, or in communicating effectively with the Court. In terms of reasonable expectations, assuming *arguendo* appellant's unfamiliarity with American law, the penalties for violation of two separate counts arising from two entirely different, though perhaps factually related, crimes do not permit an assumption that he would receive but a single punishment. Appellant's first contention is without merit.

### II.

Appellant also argues that the Court's basis for imposing sentences to run consecutively, rather than concurrently, was its unsatisfied desire that appellant explain, before sentencing, why on previous occasions, not the subject of the instant proceedings, appellant had entered the United States under fictional identities. To do so, it is contended, would constitute a violation of his Fifth Amendment rights against self-incrimination and of "fundamental principles of fairness."

Again this argument ignores the facts. The Court did not impose a harsher sentence as a result of its reading of the pre-sentence report [10] insofar as it contained references to a connection between the instant charges and appellant's part

---

8. *Id.* at 18. See also *id.* at 20.

9. Rule 11 states in pertinent part that a court shall not accept a plea of guilty "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature and the consequences of the plea."

10. The court stated the following:
"What there is to [the narcotics aspect] and I am not the judge as to

that, that is discarded from my mind." Appellant's Appendix at 9.

"Mr. Kelly, I'm not relating to [narcotics] at all. I showed you the record for the purpose to let you see it, and that is not on my mind * * *." *Id.* at 12.

"So I have nothing before me but this plea of guilty to this crime, for which that is the penalty." *Id.* at 15.

in international narcotics traffic.[11] Nor does appellant contest, in principle, the legality or propriety of the sentencing Court's consideration of the extrajudicial information contained in the presentence report, which connected appellant with other more serious crimes. Defense counsel was afforded the opportunity to review the report and made no challenges to any matters contained therein bearing on appellant's "life and characteristics." See Williams v. Oklahoma, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Williams v. New York, 337 U.S. 241, 248–250, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). As this court noted in United States v. Doyle, 348 F.2d 715, 721 (2d Cir.) (Friendly, J.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965):

> "The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. Counsel suggests that although a 'criminal record' may be considered, crimes not passed on by a court are beyond the pale, but we see nothing to warrant this distinction [citation omitted]."

See also United States v. Marcello, 423 F.2d 993, 1012 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); United States v. Onesti, 411 F.2d 783, 784 (7th Cir.), cert. denied, 396 U.S. 904, 90 S.Ct. 217, 24 L.Ed.2d 179 (1969).

■ The gravamen of appellant's contention is that by remaining silent, his failure to cooperate with any public official in connection with his prior disguised entries into this country led to a harsher sentence which imposed an un-

constitutionally "costly" penalty for the exercise of his rights under the Fifth Amendment. See Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965); cf. Gardner v. Broderick, 392 U.S. 273, 278–279, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Garrity v. New Jersey, 385 U.S. 493, 497, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 515–516, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). The line here between "cooperation" with law enforcement authorities and the court vis-a-vis past suspicious activities, on the one hand, and subjecting one's self to self-incrimination, on the other, is quite visible. We are persuaded that the sentencing Court did not impose a "price tag" on appellant's constitutional privilege to remain silent. Compare Scott v. United States, 136 U.S.App.D.C. 377, 419 F.2d 264, 266–278 (1969); Thomas v. United States, 368 F.2d 941, 945–946 (5th Cir. 1966). *Scott* and *Thomas*, on which appellant heavily relies, are distinguishable in that they both involved clear-cut attempts by sentencing courts to induce defendants who pleaded not guilty to confess their guilt of the crimes charged as a sign of repentance before sentence was announced. Here, there is no indication that the sentencing Court was seeking penitence for possible crimes not then charged against appellant. The Court was engaged in an inquiry as to whether appellant wished to cooperate with the public authorities by giving information apparently regarding *others* involved in illegal international narcotics traffic. Perhaps for reasons involving a personal moral code, personal safety or otherwise, appellant chose to remain silent.

If appellant had felt that he would be criminally implicated in any way by the information which he had at his disposal, but which he wished to share with authorities for his own benefit by "singing," he could have asserted his Fifth

---

11. The suspicious matters contained in the report suggesting the likelihood of appellant's involvement in narcotics activities were derived from appellant himself and were confirmed by Mr. McGinley, who was introduced to the court as being "interested in the defendant's case." *Id.* at 2.

Amendment privilege before the Court. This would have put the Government and the Court on notice so that the situation might have been altered by a grant of immunity from future criminal prosecution. The possibility of immunity was never suggested, however, and the Fifth Amendment privilege was never raised below. Appellant merely chose to remain silent except to state that he confined himself "to the justice of the country and to the indulgence of the judge." [12]

The Court then sentenced appellant to the maximum total term, with the caveat that future cooperation could have a favorable impact before the federal parole board.[13]

The judgment is affirmed.

12. *Id.* at 18.

13. The sentencing court concluded as follows:

   "Maybe if he is put away for a little more * * * he might find some way of cooperating and he might be able to get some help in the reduction of any term that he may be sent up for." *Id.* at 17.

   "I think I said very distinctly that he was to be put away and maybe he might cooperate with those who may consider something with regard to his sentence, and that was distinctly the Parole Board." *Id.* at 19.