UNITED STATES of America

v.

Pio GARCIA, Appellant.

UNITED STATES of America

v.

Wilfredo ANTONMARCHI, Appellant.

Nos. 75–1759, 75–1760.

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1976.

Decided Nov. 5, 1976.

Roger A. Lowenstein, Federal Public Defender for the Dist. of N. J., Newark, N. J., for appellants.

Jonathan L. Goldstein, U. S. Atty., James A. Plaisted, Asst. U. S. Atty., Newark, N. J. (on the brief), for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question presented by these consolidated appeals from judgments of sentence on pleas of guilty is whether the sentencing procedures trenched upon appellants' Fifth Amendment right against self-incrimination. We conclude that the procedures did and, accordingly, we vacate the sentences appealed from and remand for resentencing on the pleas previously entered.

As part of a plea agreement with the United States Attorney, Wilfredo Antonmarchi and Pio Garcia each pleaded guilty under 21 U.S.C. § 841(a)(1) to one count of possessing with intent to distribute cocaine. In return, the remaining counts against them were dismissed. In making its judgment of sentence on the guilty pleas, the court announced that it could not extend "clemency and lenity" to Antonmarchi, or be "lenient and merciful" to Garcia, because neither man had assisted in law enforcement investigations of illicit narcotic traffic. Garcia was sentenced to eight years imprisonment with a 3-year special parole term, and Antonmarchi was sentenced to ten years imprisonment with the same special parole term.

### I

On collision course in these appeals run two venerated principles of jurisprudence. The first is that unique jewel in the showcase of American liberty, the Fifth Amendment, commanding that one may not be compelled to testify against oneself; the second is the principle that a court may properly invoke its power to grant lenity to those who, having admitted transgressions against the sovereign, thereafter assist the sovereign in improving social order and the public welfare.

It is not open to serious question that the sentencing court strove to vindicate the second principle. Indeed, the court expressly announced its intention to reward those whose actions would serve the public order. In Garcia's case, after receiving negative replies to the question whether Garcia had been "helpful at all in terms of revealing his source of supply of cocaine," the court stated:

. . . The Court would like to be lenient and merciful. I don't understand, however, how one convicted of selling dangerous drugs can stand before a sentencing judge and on the one hand ask for leniency and compassion, clemency and consideration and, on the other hand, tell the Court there isn't any chance in heaven that he is going to help this society to rid itself of this cancerous purveying of drugs.

It is the view of this Court that this Court would not be faithful to the public trust which it holds were it not to take into consideration what amounts to your absolute refusal to be of the slightest assistance to the proper authorities in stamping this problem out.

You participated in it. You were caught and to this day, in the view of this Court, you have shown not the slightest degree of remorse.

Accordingly, it is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a term of eight years to be followed thereafter by a special parole term of two years.

Counselor, you may apprise your client of Rule 35 and the possibility of reduction of sentence.

You may also apprise him that this Court will carefully consider in the petition for any such reduction of sentence any showing of good faith which he may make towards the society from whom he now asks for clemency and favor.

Sentencing Transcript at 8–9.

Similar statements were made by the court in Antonmarchi's case:

The defendant stands before the Court once. Every day of his life he is out there in the community and apparently dealing in large quantities of drugs. I can't disregard that. I can't disregard for the sake of one moment when he stands before the Court showing that kind of contrition the fact that he makes no good act of contrition in terms of helping society rid itself of this kind of drug problem.

The Court would dearly wish to extend clemency and lenity to this defendant. It lies within your power, Mr. Antonmarchi, to make it possible for me to do so and yet keep faith with the public interest which I'm sworn to serve as well.

. . . But given what is in this probation report and the fact that there is no attempt made here to controvert what is in there and given your attitude towards refusal of any kind to be of any assistance to law enforcement authorities in cleaning up this problem, the Court has no choice other than to pronounce sentence of a substantial term of incarceration.

Accordingly, it is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a period of ten years to be followed by a special parole term of three years.

. . .

You [have] 120 days to make a motion to reduce sentence.

. . .

I will be thinking in terms of some showing for [Antonmarchi] to make to me as to why he is entitled to that kind of consideration. Do you understand me, Mr. Antonmarchi?

Sentencing Transcript at 21–23.

We are left to determine whether the principle against compelled self-incrimination was contravened by the weight accorded defendants' failure to cooperate with government authorities.

## II

Before addressing Fifth Amendment concerns, we brush aside any implications of due process deprivation such as those presented in *Poteet v. Fauver*, 517 F.2d 393 (3d Cir. 1975). No suggestion is made here that the court included in the sentences an increment for an offense other than that to which Antonmarchi and Garcia pleaded guilty. Rather, the court concentrated only on the possibility of reducing

sentence for the offenses to which pleas were entered.

We similarly dispose of the contention that the appellants were denied due process because the pre-sentence report purportedly contained rumors and hearsay allegations concerning unrelated criminal conduct. Due process, in our view, does not preclude reliance on hearsay in such a report. *Compare Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), *with United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). Moreover, Congress has expressly provided that there be no limitation on the information to be considered by a sentencing court:

18 U.S.C. *§ 3577. Use of information for sentencing*

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Added Pub.L. 91–452, Title X, § 1001(a), Oct. 15, 1970, 84 Stat. 951.

Although enacted in the same legislative package as statutes dealing with dangerous special offenders, 18 U.S.C. §§ 3573 and 3576, we find no explicit limitation in the statutory language nor do we glean a congressional intention to restrict the provisions of § 3577 to special offender cases. Buttressing our conclusion is the enactment of a statute creating a repository for *all* criminal conviction records, 18 U.S.C. § 3578, adopted on the same date as part of the same legislative package.

Notwithstanding the presence of some disputed matter in the pre-sentence reports, we find no error in the sentencing court's use of these reports. The court specifically credited defendant Garcia's version of the disputed material, assuring counsel that it would not rely upon a challenged allegation. Counsel accepted this assurance. Anton-

marchi was represented by the same attorney.[1] In Antonmarchi's case, the court offered counsel the opportunity to have an evidentiary hearing on challenged information, and ordered an adjournment even after counsel declined the opportunity. After court resumed, counsel again announced that he did not desire an evidentiary hearing. Under these circumstances, any objection to rumor or hearsay in the pre-sentence reports must be deemed to have been waived by Antonmarchi. Similarly, under these circumstances, we do not consider what procedural safeguards, if any, must be afforded before allegations of criminal activity contained in the pre-sentence report may be relied upon in sentencing. *See United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). The record indicates a careful decision by counsel after consultation with his client, and we have no proper reason to inquire into the elements of strategy or tactics that may have entered into that decision. "Under our adversary system, once a defendant has assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rest with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976).

### III

Appellants' self-incrimination argument is straightforward: they argue that the sentencing court unwittingly placed them in a "damned-if-you-do-and-damned-if-you-don't" position. To obtain lenity and thus avoid "a substantial term of incarceration," Antonmarchi was required to be of "assistance to law enforcement authorities in cleaning up [the drug] problem." Garcia was required to reveal the source of his supply of cocaine and to assist "the proper authorities in stamping this problem out."

1. The claim is made on appeal that both Garcia and Antonmarchi were denied effective assistance of counsel during the sentencing procedure. We decline to consider that claim, be-

lieving it preferable to follow the normal procedure of having the issue appropriately presented to the district court in the first instance.

In order to obtain lenity on a sentence for a guilty plea in which each had admitted guilt to a narrow compass of facts, then, appellants were in effect coerced to furnish the prosecutor with factual information of a broader and potentially unlimited factual scope. And they were required to disgorge this information without any assurance of immunity from future federal or state prosecutions resulting from the information supplied by them.

It is important to recognize the limited role in drug traffic admitted by each appellant. Antonmarchi admitted to possessing 121 grams of cocaine on May 7, 1974 at Union City, New Jersey, and further admitted to an intention to sell it. Garcia admitted that on April 6, 1974 at Union City, New Jersey, he knowingly possessed with intent to distribute 20.5 grams of cocaine.

Irrespective of what further information Garcia could divulge to the authorities in order to obtain lenity from the court, he could not be prosecuted by the federal government—without the government breaching its agreement in the plea bargain[2]—for any matters set forth in the original indictment, to-wit, possessing with intent to distribute at Union City, New Jersey, certain quantities of cocaine on certain dates. Similarly, Antonmarchi could not be prosecuted for the overt acts described in the counts dismissed as part of his plea agreement, to-wit, that he possessed with intent to distribute at Union City, New Jersey, certain quantities of cocaine and marijuana on certain dates.

But beyond the four corners of the plea agreement, there was no extension of immunity under 18 U.S.C. §§ 6002, 6003 or any other federal or state statute so providing.[3] Accordingly, if either appellant had acceded to the sentencing court's request to reveal his source of supply of cocaine, there was no guarantee that he would not be subsequently indicted for other acts not encompassed in the plea agreement.[4]

The appellants were put to a Hobson's choice: remain silent and lose the opportunity to be the objects of leniency, or speak and run the risk of additional prosecution. A price tag was thus placed on appellants' expectation of maximum consideration at the bar of justice: they had to waive the protection afforded them by the Fifth Amendment. This price was too high. We, therefore, cannot permit the sentences to stand.[5]

We recognize, and indeed emphasize, that leniency, compassion, and special consideration cannot be expected from a sentencing court upon the entry of every guilty plea. The process is not automatic. Sentencing courts are afforded wide discretion in determining whether these factors should be invoked or withheld in marking the dimensions of a sentence. One who affirmatively seeks special favor at sentencing has the burden of proving why it should

---

2. We reject the implication that the prosecution breached its promise in the plea agreement "that there would be no position taken by the government at sentence." The Antonmarchi sentencing court asked the prosecutor if Antonmarchi had cooperated and the prosecutor responded. Answering a factual question put to the prosecution by the court is not, in our view, taking a position, i. e., making a recommendation, at sentencing.

3. We acknowledge that plea agreements are struck on the basis of evidence capable of being presented in court known to the parties at the time of the agreement. We recognize the potentially troublesome situation that might arise if an effort to cooperate to obtain lenity on one count of an indictment directly and formidably implicated the pleader on the other

counts which were to be dismissed pursuant to the original agreement.

4. In the present statutory schema of immunity from prosecution, the federal judiciary is powerless to institute a grant of immunity *sua sponte*. It is the prerogative of the executive or legislative branches of government, and not the judicial branch, to request immunity from prosecution. *See* 18 U.S.C. §§ 6003, 6005. *See generally* K. Davis, Administrative Law Text 110–111 (3d ed. 1972).

5. *Accord, United States v. Acosta,* 509 F.2d 539 (5th Cir. 1975) (in banc); *United States v. Rogers,* 504 F.2d 1079, 1084–85 (5th Cir. 1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975).

be bestowed. Nothing that we say today, however, should deter the bestowal by the court of special favor upon those petitioners at the bar who have rendered special assistance to peace officers in efforts to reduce criminal activity and to punish other criminals. We do say, with the Bard, that mercy seasons justice, but the quality of mercy is strained when its price is abandonment of the classic freedom against self-incrimination.

The sentences in appeals No. 75–1759 and No. 75–1760 will be vacated and the proceedings remanded for sentencing proceedings *de novo* on the pleas of guilty heretofore entered.