**UNITED STATES of America, Appellee,**

v.

**Ismael Antonio RAMOS, Appellant.**

**No. 204, Docket 77–1271.**

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1977.

Decided Feb. 15, 1978.

Rehearing En Banc Denied Feb. 15, 1978.

Feinberg, Circuit Judge, concurred in the result and filed an opinion.

Lumbard, Circuit Judge, concurred and filed an opinion.

Timbers, Circuit Judge, dissented from denial of rehearing en banc.

Rhonda C. Fields, Asst. U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., for the Eastern District of New York and Alvin A. Schall, Asst. U. S. Atty., Brooklyn, of counsel), for appellee.

Allen Harris, New York City (Perrotta & Harris, New York City, of counsel), for appellant.

Before LUMBARD, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

The appellant, Ismael Antonio Ramos (Ramos), having waived indictment, pleaded guilty to an information, charging him with possession with intent to distribute 17 ounces of heroin in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 10 years' imprisonment plus a special parole term of 10 years. From this sentence Ramos appeals. The facts, obtained from the sentencing minutes of May 19, 1977, relating to the imposition of this sentence must be reviewed.

Prior to sentencing, Ramos, at the time of his guilty plea, had been advised by the Court that he was entitled to remain silent; that the maximum sentence is 15 years plus a $25,000 fine and a minimum special parole term of 3 years.

Ramos, then 22 years of age, was told by the Court that he might be entitled to treatment under the Youth Correction Act but that "it is entirely in my discretion and

I do not have to give reasons for not giving you that treatment". The Court suggested "if you wish it" Ramos should discuss it with his Probation Officer and that he (the Court) would take it into consideration if Ramos so desired. The advantages and disadvantages of such treatment were outlined. However, neither Ramos nor his counsel seem to have pursued the possibilities of this alternative.

On the day of sentencing, Ramos' counsel referred to the probation report, which so far as a prior criminal record is concerned, referred only to a traffic violation (conditionally discharged) and to letters from Ramos' family. He noted that Ramos was the support of his semi-invalid mother and sisters and then asked for leniency.

The probation report showed that Ramos had traveled to Chicago with some $14,000 supplied by an individual whose name Ramos gave to narcotics agents and who, as a result, was subsequently indicted. Ramos' participation was described "as a 'mule' to transport heroin between Chicago and New York". For this service Ramos, in need of money, was to receive $500.[1] Upon his arrest at the time of attempting delivery, Ramos made statements implicating the other individual but as stated in the report "he subsequently refused to testify and is considered to be generally uncooperative". A "period of incarceration" was recommended, although his involvement in criminal activities was recent and he had no prior record except the traffic violation.

Counsel for Ramos told the Court that Ramos feared the consequences to his family if he testified at the trial of the individual for whom he was acting in transporting the heroin. Thereafter, in colloquy in which Ramos' counsel, the Assistant United States Attorney and the Court participated, it became obvious that the Court placed great stress upon Ramos' cooperation with the Government by testifying. The Court said "[i]f he is anxious to show his cooperation with the Government, his time is now to say to the Government 'I'm willing to assist you in the trial'." (32–A). Counsel for Ramos even "advised him that possibly a more heavier [sic] sentence could possibly result". (34–A). The Court, after stating that he had read the probation report [which contained references to Ramos' refusal to testify] and that he had considered Ramos' indictment waiver and guilty plea, referred to counsel's "statements with respect to his [Ramos'] cooperation [which] are not very helpful to the Court" and thereupon sentenced Ramos to 10 years' imprisonment plus a special parole term of 10 years.

This court cannot be unmindful of the fact that Ramos, on this record, appears to have been only a transporter [*i. e.,* a "mule"] of the heroin, that he had given the name of the individual for whom he was acting, that his testimony had not been shown to be vital to the successful prosecution of that individual, that he was 23 years of age at the time of sentencing, and that he was not a user or distributor [in the sense of being a "middleman"] of narcotics.

In our task of reviewing countless appeals of narcotics convictions we have had to become aware of sentences meted out to convicted traffickers in narcotics. Although we are mindful of an appellate policy of giving the broadest discretion to the sentencing judge, we have read the sentencing minutes and the probation report and are more than somewhat in doubt that the length of the sentence was not influenced by Ramos' refusal to testify for [cooperate with] the Government. This doubt is created because the judge gave no reasons for selecting the particular sentence.

The Proposed Rules on Sentencing of the Judicial Council of the Second Circuit (March 17, 1976) provide in section III(C):

> "When sentence is imposed, the court should:
>
> (3) State for the record, in the presence of the defendant, the reasons for the particular sentence imposed and for rejecting available sentencing alternatives; . . ."

---

1. Ramos told the Probation Officer "that his family was in poor financial condition and he became involved in the offense 'out of desperation'."

Likewise, the American Bar Association Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) state that the court:

"(ii) normally should state for the record in the presence of the defendant the reasons for selecting the particular sentence to be imposed. . . ." § 5.6(ii).

The Third Circuit was faced with a not too dissimilar situation in *United States v. Garcia*, 544 F.2d 681 (1976). Although Fifth Amendment rights are not here involved (the question does not arise here because the stated reason for Ramos' failure to testify is fear of harm to his family), nevertheless the sentencing problem was before the *Garcia* court, which said:

"The appellants were put to a Hobson's choice: remain silent and lose the opportunity to be the objects of leniency, or speak and run the risk of additional prosecution [here violence to his immediate family]. A price tag was thus placed on appellants' expectation of maximum consideration at the bar of justice: they had to waive the protection afforded them by the Fifth Amendment. This price was too high. We, therefore, cannot permit the sentences to stand." (footnote omitted). 544 F.2d 681, at 685.

We believe, since no "reasons for selecting the particular sentence to be imposed" were stated by the Court, that Ramos' refusal to testify may have been an important factor in the sentence. The present sentence should be vacated and Ramos should be re-sentenced after hearings conducted before another judge.

FEINBERG, Circuit Judge (concurring in the result):

I agree with Judge Moore that the trial judge should have stated the reasons for his harsh sentence. See, in addition to the authorities cited by Judge Moore, ABA Project on Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences § 2.3(c) (Approved Draft, 1968). Even before the recommendation of the Judicial Council in March 1976, we had emphasized the desirability of a statement of reasons by the sentencing judge, although we had not required it. See *United States v. Driscoll*, 496 F.2d 252 (2d Cir. 1974); *United States v. Velazquez*, 482 F.2d 139 (2d Cir. 1973); *United States v. Brown*, 479 F.2d 1170 (2d Cir. 1973). In addition, we had held that even in the absence of an absolute requirement that reasons ordinarily be stated, particular circumstances might demand it. See *McGee v. United States*, 462 F.2d 243, 247 (2d Cir. 1972). Accordingly, I concur in the result.

LUMBARD, Circuit Judge (concurring):

Although I agree with my colleagues that the appellant's sentence should be vacated, I think something more must be said about why such an unusually severe sentence, imposed for the wrong reasons, can not be permitted to stand.

Ismael Ramos was apprehended by the police in January, 1977 and charged with possession of heroin. Following his arrest, he first cooperated with authorities in implicating Juan Balaguer as the principal in the sale of heroin for which Ramos was the messenger. Subsequently, however, he refused to testify against Balaguer at the latter's trial, citing his fear of reprisals against his family. The government made no attempt to have Ramos give his testimony under a grant of immunity.

On March 18, 1977, having waived indictment, Ramos pled guilty in the Eastern District to a one count information charging him with possession of 17 ounces of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1970). He came before Judge Platt on May 19 for sentencing.

The presentence report shows that Ramos is a 23 year old with strong family ties and no prior criminal record, save one traffic violation. Further, the report expresses the opinion that the defendant only recently became involved in criminal activities and that his offense is largely attributable to his concern for the well-being of his siblings and chronically ill mother. At sentencing, Judge Platt engaged counsel for Ramos and the Assistant United States Attorney in a

lengthy colloquy centering upon the defendant's refusal to cooperate with the United States Attorney's office concerning the prosecution of Balaguer—that is, his refusal to testify against his former confederate.

At one point during this discussion, Judge Platt offered to adjourn the proceeding to allow the attorney for the government one more try at persuading Ramos to change his mind. Ramos refused, however, and the court imposed a sentence of ten years' imprisonment to be followed by ten years' special parole. The statutory maximum is fifteen years' imprisonment. Contrary to Judge Moore's suggestion, I believe that the minutes of the sentencing hearing make abundantly clear Judge Platt's "reasons for selecting the particular sentence to be imposed": By imposing an unusually severe sentence he sought to pressure Ramos to give testimony against Balaguer and, failing that, to punish Ramos for his refusal. To impose such a sentence of *in terrorem* proportions is not only an abuse of the court's powers, it is also an interference with the efficient and speedy administration of criminal justice.

As the record stands, Ramos committed no offense in refusing to testify against Balaguer. But he speeded the disposition of the court's business by pleading guilty and thus making it unnecessary to have a trial of the charges. If, in addition, the government needed Ramos' testimony against Balaguer, it could have granted him immunity from further prosecution in connection with the heroin transaction and compelled his testimony.[1] Upon Ramos' continued refusal to cooperate, he then would have been subject to possible punishment for contempt of court. The government did not choose to pursue this course, however. On this record, therefore, there was no justification for the court's imposing so severe a sentence, in large part for refusing to testify for the government.[2]

The effect on the administration of criminal justice of such an excessive sentence following a plea of guilty presents an additional reason for vacating Ramos' sentence. Had Ramos stood mute and insisted on his right to be tried, instead of pleading guilty, he would have been no worse off upon conviction. Indeed, from our knowledge of dispositions in such cases, he would undoubtedly have been much better off, as a ten year sentence, with ten year special parole to follow, is unheard of in cases such as Ramos'. It follows that if Ramos' ten year sentence after a plea were permitted to stand, no one would plead guilty before Judge Platt or any judge who employed similar tactics to encourage cooperation with the government. Thus, many defendants, apprehensive about sentences on pleas of guilty, would choose to stand trial. Such a trend would lead to the trial of more criminal cases and would seriously threaten the ability of the district courts to try many of their criminal cases within the time limits required by the Speedy Trial Act of 1974.[3]

TIMBERS, Circuit Judge, dissenting from denial of rehearing en banc:[1]

Less than a year ago, in *United States v. Robin*, 553 F.2d 8 (2 Cir. 1977), the nine

---

1. 18 U.S.C. § 6001, et seq. (1970).

2. Our decisions in *United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972), and *United States v. Vermeulen*, 436 F.2d 72 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971), are not in point. In each of these cases we ruled only that the sentencing judge, in his discretion, may take into account as a mitigating factor the defendant's voluntary cooperation with the authorities. Nowhere have we suggested that the defendant's refusal to cooperate may be considered in increasing the sentence he would otherwise receive. It is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is

quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense.

3. 18 U.S.C. § 3161, et seq. (1975).

1. The instant en banc proceedings took place prior to the filing of the panel opinions. The one active judge on the panel, prior to filing the panel opinions, circulated them to all of the other active judges so as to afford an opportunity for en banc consideration if any active judge desired it. An en banc poll was requested, with the result indicated in the order to which this dissenting opinion is appended.

active judges of this Court unanimously agreed upon certain guidelines to be considered "in deciding whether to remand for retrial or resentencing before a different judge and to assure that no personal criticism of the original judge is involved." *Id.* at 11.

Our unanimous decision in *Robin*, referred to above, emerged from en banc proceedings which in turn followed a 2–1 panel decision in which I dissented, 545 F.2d at 782–84, inter alia, on the ground that the majority's asserted reason for vacating the sentence—namely, that the defense had not been given sufficient time to examine the presentence report—surely would not impair the ability of *that judge* to reimpose sentence on remand. Judge Motley was the original sentencing judge in *Robin*. I dissented from Judge Moore's direction for the panel majority that "resentencing will be before a different judge." 545 F.2d at 782. And while I was one of the nine active judges who later unanimously agreed upon the guidelines for remanding to a different judge for retrial or resentencing, 553 F.2d 8, I also was one of the three active judges who thought that those guidelines did not warrant assignment of the case to a judge other than Judge Motley for resentencing:

"Judges Oakes, Timbers and Meskill, while concurring in the foregoing principles, believe that their application to the facts of this case does not warrant assignment of the case to a different judge for resentencing upon remand." 553 F.2d at 11.

Now less than a year later, Judge Moore's panel majority opinion in the instant *Ramos* case, concurred in by Judge Feinberg, concludes that "since no 'reasons for selecting the particular sentence to be imposed' were stated by the Court . . . . [t]he present sentence should be vacated *and Ramos should be re-sentenced after hearings conducted before another judge.*" 572 F.2d 362 (emphasis added).

It strikes me as elemental that, *if* the true reason for vacating this sentence is that the sentencing judge erred in failing to give reasons for his sentence, then he should be given the opportunity to explain why he did what he did, by remanding the case to him for re-sentencing. To cut off this opportunity is demeaning to the trial judge—precisely one of the things we sought to guard against in our en banc opinion in *Robin* : "to assure that no personal criticism of the original judge is involved." 553 F.2d at 11.

Significantly the panel opinions in the instant *Ramos* case are eloquently silent with respect to the unanimous *Robin* guidelines for remanding for resentencing by a different judge. I suggest that the reason for this is that, by the very nature of the case and the reasons for vacating the sentence, there could be no rational justification for not remanding to Judge Platt for resentencing.

For these reasons I respectfully dissent from the denial of rehearing en banc.