**UNITED STATES of America**

v.

**HEUBEL, Mario Vito, Appellant.**

No. 88-3548.

United States Court of Appeals, Third Circuit.

Submitted Nov. 18, 1988.

Decided Jan. 9, 1989.

---

Mario Vito Heubel, Loretto, Pa., pro se.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., W.D. Pennsylvania, Pittsburgh, Pa., for appellee.

Before MANSMANN, HUTCHINSON and VAN DUSEN, Circuit Judges

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

In this case we are presented with an appeal from the denial of what purports to be a Federal Rule of Criminal Procedure 35(b) motion for reduction of sentence filed by defendant-appellant, Mario Vito Heubel. First, we must decide whether we have jurisdiction to consider the appeal since, while Heubel's original Rule 35(b) motion was filed within the 120 days after imposition of sentence allowed by the rule, the supplemental Rule 35(b) motion in which he first raised the issue he seeks to appeal was not. Second, if we find that we have jurisdiction, we must resolve the issue raised on appeal, which is whether the district court impermissibly enhanced Heubel's sentence because of his failure to cooperate with the government and, in so doing, infringed his right not to give testimony that might incriminate himself under the Fifth Amendment to the United States Constitution.

### I. *Background*

Defendant-appellant Heubel pled guilty in the United States District Court for the Western District of Pennsylvania to one charge of violating 21 U.S.C. § 841(a)(1) by possessing cocaine with intent to distribute. At sentencing, on December 30, 1986, the district court observed that Heubel had been arrested with "a large quantity of cocaine of rather high grade," and asked where he got the money for it. Defendant replied, "[t]he product was fronted to me...." The court inquired, "[b]y whom?" Heubel began to answer, "[b]y a gentleman—," but defense counsel invoked the Fifth Amendment privilege against self-incrimination as to a potential conspiracy charge.

The court then observed:

"Well, he's in very serious trouble now and he isn't going to help himself very much by saying this might involve him in others. And usually when a defendant is convicted and pleads, he's pretty ready to help himself by involving other people even though it does tell—does make him susceptible to further prosecution. But, there are ways of taking care of that."

After defense counsel reaffirmed that Heubel was invoking his Fifth Amendment privilege, the court said, "[a]nd there is a lot of debate in the papers whether that's a very honorable thing to do or not, but we are not commenting on that."

The court then commented, "[h]e's got to have a lot of experience and a lot of reliability in the trade for some larger dealer to front this quantity to him." The court then asked, "[w]hat has he told the authorities?" Defense counsel stated that it was his understanding that no one had asked defendant for information. The court inquired whether Heubel was willing to talk and suggested that this was "a rather usual case for granting immunity." Defense counsel said that he would discuss the matter with Heubel. The court said,

"[y]ou know, the minute he goes to jail, you'll go over and you will take up three, four nice pages of rule 35, and it's not going to be granted. Usually I keep those on file just to show they are timely filed, if there is any reason for later action."

Defendant himself then related the circumstances leading to his involvement with cocaine. At this point, the following exchange occurred:

"DEFENDANT: But, I can honestly say that I know I will never be involved in anything like this again.

THE COURT: Well, we'll make sure that you are not. Because this is not a small one-gram deal, or anything. You're in possession of almost a kilo. The quality of some of it is pretty high.

Let's see. 658 grams of this. It was 72 percent pure. Pretty high. 28 grams. 74 percent, and a hundred and forty seven, forty percent. All of that would be susceptible of cutting, and some of it cutting several times.

So, he's got a total of 850 or 900 grams of cocaine, pretty near a kilogram. Almost two pounds. He's got over a pound

and a half and susceptible of cutting. He's got scales and other matters there which allow for division and cutting. It was a pretty big—the amounts you sold, did you cut it?

DEFENDANT: No, Your Honor.

THE COURT: Never? Well, people don't usually sell quantity unless they are selling it in sort of commercial quantities, ounces or something. When it reaches the street around here, it's usually about eighteen percent.

Well, I think you have had extensive experience and you have got a lot to say, and that's the only thing that's going to help you out in the future."

Then, immediately before imposing sentence, the district court made the following comments:

"All right, Mr. Heubel, as you can see, the Court is impressed by the quantity that you had in your possession at the time of arrest. The materials, the scale, your record of drug transactions, et cetera, shows that you were involved in this real deeply.

It wasn't a one-shot transaction. You're in the possession of a quantity that costs an awful lot of money and either someone loans it to you or someone loans the money to you or someone allows you to take this on credit.

From our experience with the trade, people don't get that kind of credit unless they have established clear credibility and reliability in this matter with the supplying agency."

Defendant was then sentenced to a fifteen-year prison term and a three-year term of special parole.[1]

After imposing sentence, the district court made these additional comments:

"Mr. Heubel, you have been sentenced and the Court has sentenced you deliberately and with forethought to the maximum sentence.

The only thing that saves any people here or helps them in any way is their complete, full, unreserved cooperation.

It's been told that you were told that at the outset, and you, under advice of your attorney, said nothing, which was probably, at that stage, a proper thing, although it didn't show what I would call, you know, full and true contrition.

It's only after you sit in a jail a while that you begin to realize the situation you're in. It is often that we have counsel who file motions later for reduction or modification.

No attention will be paid to such a motion in your case unless it is supported by rather extensive evidence of full and effective cooperation. You have that opportunity open to you. And I tell the United States that I don't think they, in the performance of their duties, can afford not to take advantage of that."

On April 21, 1987, defendant, through counsel, filed a motion for reduction of sentence pursuant to Fed.R.Crim.P. 35(b). This motion was based on his employment history and his lack of a criminal record. The motion was not ruled on, and on July 31, 1987, Heubel filed a supplemental Rule 35(b) sentence reduction motion, also through counsel. This supplemental motion was based on his accomplishments while incarcerated. The motion was still not ruled upon, and on March 31, 1988, Heubel filed what purported to be another Rule 35(b) supplemental sentence reduction motion, this time *pro se*. In this motion, Heubel argued that the district court was violating his privilege against self-incrimination by punishing him for failing to cooperate with the government. The motion was still not ruled on, and on August 5, 1988, Heubel wrote to the Chief Judge of the United States District Court for the Western District of Pennsylvania and sought his help in securing a ruling. On August 11, 1988, the district court denied Heubel's motion. In its memorandum order, it observed:

"At the time of sentence it was noted that [the defendant] had offered no cooperation to law enforcement officers de-

---

1. We note that Heubel was sentenced for an offense committed prior to November 1, 1987, and therefore the new sentencing guidelines did not apply. *See United States v. Frank,* 864 F.2d 992, 1007–16 (3d Cir. 1988).

spite their notice to him that said cooperation would be brought to the attention of the court. He chose to stand mute.

The sentence was imposed in view of the large amount of cocaine in his possession, the paraphernalia for drug weighing and an account book of his transactions. We further noted that persons are not allowed possession of large amounts of cocaine by suppliers unless substantial cash is paid or the party supplied enjoys and has earned a good reputation for reliability in the drug trade. Nothing in the above multiple voluminous motions gives the court any grounds for reduction of the original sentence. It is my practice to take under advisement timely filed motions for reduction of sentences but not act on them until sufficient information is provided to the court of substantial and effective cooperation."

## II. *The Jurisdiction Issue*

■ Fed.R.Crim.P. 35, prior to its 1984 amendment by Pub.L. 98–473, 98 Stat. 1837, 2015–16 (1984), and as it applies to offenses committed prior to November 1, 1987, including appellant's, provides:

"Rule 35. Correction or Reduction of Sentence

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of pro-bation shall constitute a permissible reduction of sentence under this subdivision."

Defendant's second supplemental motion for reduction of sentence in which he first raises his Fifth Amendment claim purports to be filed pursuant to Rule 35(b). Were we to take it as it appears on its face, there is a serious question as to whether we would have jurisdiction because of the 120–day time limit provided for in Rule 35(b). Heubel's original Rule 35 motion was filed within 120 days of his sentencing and thus was timely. However, his second supplemental motion was not filed within 120 days of his sentencing and, therefore, in order for us to consider the claim raised therein, we would have to find that it relates back to the original one.

The United States argues that this cannot be done, and cites to four cases finding that, untimely, later, separate Rule 35(b) motions do not relate back to an original timely filed motion. *United States v. Blanton*, 739 F.2d 209, 213 (6th Cir.1984); *United States v. Counter*, 661 F.2d 374, 376 (5th Cir.1981); *United States v. Inendino*, 655 F.2d 108, 110 (7th Cir.1981); *United States v. Hetrick*, 644 F.2d 752, 756 (9th Cir.1980). We note that these cases do not deal with the specific circumstances raised by this case and are not binding on this circuit. We further note that there may very well be unique instances in which an untimely supplemental Rule 35(b) motion relates back to an original, timely-filed one, just as there are situations in which an original Rule 35(b) motion not filed within 120 days may be considered by the court. *See Gov't of Virgin Islands v. Gereau*, 603 F.2d 438, 442 (3d Cir.1979) (per curiam) (where defendant or his counsel is affirmatively misled by the district court as to date by which motion for reduction of sentence must be filed, even though government authority acted in good faith, late filing will not deprive court of jurisdiction to decide motion); *Warren v. United States*, 358 F.2d 527, 530–31 (D.C.Cir.1965) (per curiam) (court has jurisdiction where a Rule 35(b) motion was filed late as a result of a representation in a letter from the United

States Attorney to defendant's counsel that the court of appeals' mandate was received by the district court on a date 20 days after the actual receipt).

However, we find that we do not have to reach here the issue of whether this case presents such unique circumstances, because we find that we have jurisdiction based upon an alternative ground. Heubel first raised his claim that his sentence violated his Fifth Amendment self-incrimination rights in a *pro se* motion that purported to be a supplemental Rule 35(b) motion. We think it would have more appropriately been titled an original Rule 35(a) motion, pursuant to which the court may correct an illegal sentence at any time. Since Heubel argues that his sentence was illegal because it violated his constitutional rights, we would then have jurisdiction. *See United States v. Maples*, 501 F.2d 985, 986–87 (4th Cir.1974). Because we are required to give some deference to the legal work product of *pro se* litigants, we will treat it as such. Having thus found that we have jurisdiction, we turn to the merits of Heubel's claim.

## III. *Defendant's claim that his sentence violated his Fifth Amendment right not to incriminate himself*

Defendant's claim revolves around the conflict between two principles of American criminal law. The first is the Fifth Amendment clause providing that one may not be compelled to testify against one's self. The second is the principle that a court may consider all available information in formulating a sentence and may properly grant lenity to those who assist the government in the prosecution of other criminals and those who show contrition for their crimes and take steps toward rehabilitation and re-establishment as good and responsible members of society by cooperating with, and providing information to, the government.[2]

The starting point for our analysis is our decision in *United States v. Garcia*, 544 F.2d 681 (3d Cir.1976). Its facts are very similar to the facts in the present case. In *Garcia* we were faced with an appeal from the sentence of a district court prior to which the district court had announced that it could not show any lenience to the defendants because "neither man had assisted in law enforcement investigations of illicit narcotic traffic." *Id.* at 682. The district court, prior to sentencing, had made the following comments in the case of one defendant:

"... The Court would like to be lenient and merciful. I don't understand, however, how one convicted of selling dangerous drugs can stand before a sentencing judge and on the one hand ask for leniency and compassion, clemency and consideration and, on the other hand, tell the Court there isn't any chance in heaven that he is going to help this society rid itself of this cancerous purveying of drugs.

It is the view of this Court that this Court would not be faithful to the public trust which it holds were it not to take into consideration what amounts to your absolute refusal to be of the slightest assistance to the proper authorities in stamping this problem out.

You participated in it. You were caught and to this day, in the view of this Court, you have shown not the slightest degree of remorse.

Accordingly, it is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprison-

---

**2.** *See* 18 U.S.C. § 3661, which provides:

"§ 3661. Use of information for sentencing

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

*See also Roberts v. United States*, 445 U.S. 552, 557, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980)

("cooperation with the authorities is a 'laudable endeavor' that bears a 'rational connection to a defendant's willingness to shape up and change his behavior' ... [and] [u]nless a different explanation is provided, a defendant's refusal to assist in the investigation of ongoing crimes gives rise to an inference that these laudable attitudes are lacking").

ment for a term of eight years to be followed thereafter by a special parole term of two years.

Counselor, you may apprise your client of Rule 35 and the possibility of reduction of sentence.

You may also apprise him that this Court will carefully consider in the petition for any such reduction of sentence any showing of good faith which he may make towards the society from whom he now asks for clemency and favor."

*Id.* at 683.

The district court made the following comments in the case of the other defendant:

"The defendant stands before the Court once. Every day of his life he is out there in the community and apparently dealing in large quantities of drugs. I can't disregard that. I can't disregard for the sake of one moment when he stands before the Court showing that kind of contrition the fact that he makes no good act of contrition in terms of helping society rid itself of this kind of drug problem.

The Court would dearly wish to extend clemency and lenity to this defendant. It lies within your power, ..., to make it possible for me to do so and yet keep faith with the public interest which I'm sworn to serve as well.

... But given what is in this probation report and the fact that there is no attempt made here to controvert what is in there and given your attitude towards refusal of any kind to be of any assistance to law enforcement authorities in cleaning up this problem, the Court has no choice other than to pronounce sentence of a substantial term of incarceration.

Accordingly, it is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a period of ten years to be followed by a special parole term of three years.

.     .     .     .     .

You [have] 120 days to make a motion to reduce sentence.

.     .     .     .     .

I will be thinking in terms of some showing for [defendant] to make to me as to why he is entitled to that kind of consideration. Do you understand me ...?"

*Id.*

We noted the existence of a conflict between the self-incrimination clause of the Fifth Amendment and the principle that a court may properly grant lenity to those who cooperate with the government. We then found that the defendants had been put to a "Hobson's choice" of remaining silent and losing "the opportunity to be the objects of leniency," or speaking and running "the risk of additional prosecution." We then noted that "[a] price tag was thus placed on appellants' expectation of maximum consideration at the bar of justice; they had to waive the protection afforded them by the Fifth Amendment," and "[t]his price was too high." We therefore vacated the sentences and remanded to the same judge for resentencing.

Many other circuits have reached similar conclusions in similar situations. *See United States v. Safirstein,* 827 F.2d 1380, 1388 (9th Cir.1987) ("a sentencing judge may not penalize the exercise of a defendant's privilege against self-incrimination by enhancing his sentence based upon the defendant's failure to cooperate by implicating other persons or otherwise admitting guilt to crimes with which he is not charged"); *United States v. Messer,* 785 F.2d 832, 834 (9th Cir.1986) ("court cannot condition leniency upon a defendant's refusal to admit to a crime not charged"); *DiGiovanni v. United States,* 596 F.2d 74, 75 (2d Cir.1979) (a defendant's cooperation with the authorities is a mitigating factor that may be taken into account by the sentencing judge, but he or she may not impose additional punishment on a defendant who by his or her silence has committed no additional offense); *United States v. Ramos,* 572 F.2d 360, 361–62 (2d Cir.1978) (sentence must be vacated and case remanded for resentencing where it appeared that sentence's

length was influenced by defendant's refusal to testify for government); *United States v. Rogers*, 504 F.2d 1079, 1084–85 (5th Cir.1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975) (court may not take defendant's refusal to cooperate into account in sentencing); *United States v. Acosta*, 501 F.2d 1330, 1337–38 (5th Cir.1974) (Gee, J., dissenting), vacated and dissent adopted by court in banc, 509 F.2d 539 (5th Cir.1975) (in banc) (per curiam) (same).

■ We note that in many cases in which a defendant does not invoke his or her Fifth Amendment privilege it may be entirely appropriate, assuming another valid explanation is not given, for a sentencing court to consider his or her failure to cooperate with the authorities as evidence that he or she is not ready to show contrition and begin the rehabilitative process. *See Roberts v. United States*, 445 U.S. 552, 556–58, 100 S.Ct. 1358, 1362–63, 63 L.Ed.2d 622 (1980); *Mallette v. Scully*, 752 F.2d 26, 30 (2d Cir.1984). *Cf. United States v. Santamaria*, 788 F.2d 824, 827 (1st Cir.1986).

■ We also note that in cases in which a defendant does cooperate with the authorities to the government's benefit, there is no reason that a sentencing court could not use that cooperation as an affirmative fact upon which a sort of *quid pro quo* leniency may be based; or as affirmative evidence supporting an inference that a defendant has shown contrition and taken a step towards rehabilitation and re-establishment as a responsible member of society.

■ However, we today reaffirm the principle we set out in *Garcia:* where a defendant invokes his or her Fifth Amendment privilege against self-incrimination in a timely manner, a sentencing court may not use his or her failure to waive that right as negative evidence to penalize him or her in deciding upon the appropriate sentence.

We acknowledge that this is a very fine line, which in many cases will be difficult to discern. We also recognize that in many instances in which a defendant's failure to cooperate could be valuable evidence of his or her lack of rehabilitative potential, or lack of contrition and willingness to make amends for his or her crime, the sentencing court will be unable to consider it. However, when faced with a conflict between two principles of law, one of which is embodied in statute and tradition, and the other of which is embodied in the Constitution, that which is in the Constitution must hold sway.

■ Having thus reaffirmed our holding in *Garcia*, we turn to apply it to the facts in the present case. As we have discussed, the district court noted at sentencing, after Heubel's counsel had asserted Heubel's Fifth Amendment right not to incriminate himself, that "you [Heubel] have got a lot to say, and that is the only thing that is going to help you out in the future." Then, after sentencing, the district court stated:

"Mr. Heubel, you have been sentenced and the Court has sentenced you deliberately and with forethought to the maximum sentence.

The only thing that saves any people here or helps them in any way is their complete, full, unreserved cooperation. . . .

\* \* \* \* \* \*

No attention will be paid . . . [to a Rule 35] motion in your case unless it is supported by rather extensive evidence of full and effective cooperation. . . ."

Then, in its memorandum order on the sentencing reduction motions, the district court noted: ". . . [i]t is my practice to take under advisement timely filed motions for reduction of sentences but not act on them until sufficient information is provided to the court of substantial and effective cooperation."

We find, based on this record, that the district court improperly penalized Heubel by taking his exercise of his Fifth Amendment right against self-incrimination into account as negative evidence in the formulation of his sentence. Accordingly, the

sentence must be vacated and the case remanded for resentencing.[3]

■ Heubel also asks that we remand this case to a different judge for the resentencing. The government argues that there is no reason for reassignment to another judge and cites to our decision in *United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982).

In *Baylin*, we vacated a defendant's sentence and remanded for resentencing because we found that the district court impermissibly relied on an inference of his involvement in illegal activities from the government's promise not to prosecute. The defendant requested that resentencing be before a different judge and urged us to adopt a test promulgated by the Second Circuit in *United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977) (in banc) (per curiam).

The *Robin* test provides for consideration of the following factors:

> "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." [4]

*Id.* at 10. We decided that we did not have to adopt the *Robin* test because, even assuming its applicability, the defendant's ar-

guments did not satisfy its requirements. *Baylin* at 1043.

Similarly, we find today that even if we were to adopt the *Robin* test or a similar test, Heubel has not satisfied its requirements. Turning to the first *Robin* factor, Heubel has not shown us any reasons, nor can we think of any, why the district judge would reasonably be expected on remand to have substantial difficulty putting "previously expressed views that we have found to be erroneous" out of his mind. As we noted in *Baylin*, "[i]t is no more difficult for a judge to discount an impermissible factor in sentencing than to ignore evidence at trial that was heard and excluded on proper objection." *Id.* at 1043. We are therefore confident that the district judge will be able to resentence Heubel without considering his failure to cooperate with the government.

Turning to the second factor, we can see no reason why reassignment is advisable to preserve the appearance of justice. The fact that the district judge has made a legal error does not create an appearance that he will be unable to correct it now that he has been made aware of it. As for the third factor, as we noted in *Baylin*, "while there is little duplication of effort involved in remanding to a different judge in the context of a guilty plea (as opposed to a lengthy trial), this criterion alone is not enough to overcome the other factors favoring remand to the original judge." *Id.* Therefore, we will remand defendant's case to the same judge for resentencing.[5]

---

3. We also note that even had we not found the district court's statements to improperly penalize defendant for exercising his Fifth Amendment rights, it is likely that we would be compelled to reverse because its failure to consider Rule 35 motions until evidence of cooperation is produced seems to violate the Due Process principle that sentencing courts must consider the "characteristics and propensities of the individual ... [and may not] adopt rules to fix given punishments on given classes of offenders." *Geraghty v. United States Parole Commission*, 579 F.2d 238, 260 (3d Cir.1978), *vacated and remanded on other grounds*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). *See also United States v. Wright*, 799 F.2d 423, 426 (8th Cir.1986); *United States v. Santamaria*, 788 F.2d 824, 827 (1st Cir.1986); *United States v. Barker*, 771 F.2d 1362, 1365–66 (9th Cir.1985); *United*

*States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir.1984).

4. The Ninth Circuit adopted the *Robin* test in *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir.1979); the Sixth Circuit adopted it in *Bercheny v. Johnson*, 633 F.2d 473, 476–77 (6th Cir. 1980); the First Circuit adopted it in *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 832 (1st Cir.1987); and the Fifth Circuit adopted it in *Simon v. City of Clute, Texas*, 825 F.2d 940, 943–44 (5th Cir.1987).

5. We note that the *Garcia* court also remanded to the same judge for resentencing, although it did not discuss it vis-a-vis the possibility of remanding for resentencing before a different judge.

### IV. *Conclusion*

For the foregoing reasons, we find that we have jurisdiction of this appeal pursuant to Fed.R.Crim.P. 35(a), and that the district court impermissibly considered defendant's failure to waive his Fifth Amendment rights against self-incrimination in formulating his sentence. Therefore, we will vacate the sentence and remand for resentencing. Since defendant has not demonstrated any valid reason why we should not do so, our remand for resentencing will be to the same district court judge.