**UNITED STATES of America**

v.

**Anthony SOLDANO, Defendant.**

**No. 75 Cr. 687.**

United States District Court,
S. D. New York.

Sept. 9, 1977.

Robert B. Fiske, Jr., U. S. Atty., New York City, Dominic F. Amorosa, Asst. U. S. Atty., New York City, of counsel, for the Government.

Robert Blossner, New York City, for defendant.

IRVING BEN COOPER, District Judge.

On December 3, 1975 we imposed a sentence of fifteen (15) years on this defendant following the jury's verdict convicting him of conspiracy (count 1) to violate the narcotics laws (21 U.S.C. § 846) and (count 9) distribution and possession with intent to distribute heroin and cocaine (21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A); 18 U.S.C. § 2). The maximum sentence on both counts: 30 years and $50,000 fine. Defendant now moves for a reduction of sentence pursuant to Rule 35, Federal Rules of Criminal Procedure.

The essence of the grounds advanced by defendant (affidavits of his wife and attorney) is the hardship which has befallen his family following his incarceration. Without assigning any reason therefor, counsel advances the opinion (paragraph 11 of his supporting affidavit verified August 23, 1977):

Whatever the value of punishment and deterrences to society, it is respectfully submitted that no purpose would be served in holding the defendant to his original term. . . .

Defendant and his codefendants stood trial for participation in an extensive and intricate scheme for the illegal distribution of huge amounts of narcotics. When they came on for sentence, we had occasion to comment:

We have presided over trials involving the sale of substantial quantities of narcotics. Never, however, on a scale as extraordinary as this with its enormous quantities of heroin bought and sold on an almost daily basis. The activities of this group emphasize the overlords and regimental tiers of operation, all governed by tight maneuvers and bold enough to successfully avoid governmental detection of which they were constantly apprehensive and aware. Nor have the important operational details of their cruel enterprise come to light even at this late date.

Let's face it. So inhuman, ruthless and cold blooded was their approach to the execution of their nefarious schemes that we sat aghast at the unfolding of the enormity of their horrifying indifference to life's values.

The holocaust of misery, the dreadful terminus of life for legions following the vast narcotic operations revealed herein too horrifying even to contemplate.

[*USA v. Magnano et al*, sentencing minutes at p. 52]

At the same time, the Government placed upon the record (factually supported):

Soldano . . . operated as a supplier of heroin. . . . Soldano sold six pounds of pure heroin in January 1974 for approximately $150,000 in cash. [He has] a prior narcotic conviction . . . [and is] associated with major organized crime figures in New York City.

Indeed defendant's prior criminal record is of a serious nature; it includes his conviction by plea in 1954 to attempted felonious possession of a narcotic drug. By his own admission, defendant had no gainful em-

ployment for ten years prior to sentence and appears to have supported himself through high-level narcotics trafficking.

As to the apparent hardship on his family: Over decades of judicial service, we have painfully and repeatedly witnessed the unceasing misery and the cruel hardship visited upon the family of a defendant sentenced to a substantial period of imprisonment. We are fully aware of the harsh fact that almost invariably it is the family that suffers much more than the sentenced felon. We make as much allowance for so throbbing a factor as is reasonable, always bearing in mind that justice must be done to defendant and accuser (community) alike. And so we did in this case at the time this defendant came on for sentence.

It must be obvious that each human being tempted to commit crime has a choice to make: whether to succumb and possibly endanger (often beyond recall) one's family or resist and avoid disaster to the family. We venture to suggest that most adopt the latter course.

And what of the victims of the narcotics traffic rendered helpless physically and mentally by their indulgence? Most of them have families, too—families stricken and bereaved by the holocaust, and irreparable damage, which has befallen them and the community. Are they not entitled to our consideration as well?

We are constrained to and simply must deny the instant application in its entirety.

SO ORDERED.