*Mine Workers v. Gibbs, supra.* Accordingly, defendants' motion will be granted.

**UNITED STATES of America**

v.

**Gerard CACHOIAN, Defendant.**

**No. S75 Cr. 687.**

United States District Court, S. D. New York.

Nov. 17, 1977.

Robert B. Fiske, Jr., U. S. Atty., Federico E. Virella, Jr., Asst. U. S. Atty., New York City, of counsel, for the Government.

Anderson, Russell, Kill & Olick, P. C. by John H. Doyle, III, New York City, for defendant.

## MEMORANDUM

IRVING BEN COOPER, District Judge.

The defendant has timely moved by his attorney for a reduction of sentence pursuant to Rule 35, Federal Rules of Criminal Procedure. After a thorough study of all papers in this matter, we are constrained to deny his application.

On September 22, 1975, defendant entered a plea of guilty to one count of possessing heroin with intent to distribute it. Defendant did not appear on the sentence date and a bench warrant was issued. He remained a fugitive until January, 1977 when he was apprehended. On February 23, 1977, we imposed a sentence of twelve years imprisonment and six years special parole pursuant to Title 21, U.S. Code, Section 841 since defendant was a second narcotics offender. At the time sentence was imposed, we stated our impression (derived from a most extensive presentence report prepared by the U.S. Probation Office and from the Sentencing Memorandum submitted by the Government) that the defendant lacked concern for people and, indeed, had visited harm upon many. These were mild words.

The Government's Sentencing Memorandum depicted defendant's role (as proved by the evidence at trial of defendant's co-conspirators) as a heroin customer of a massive, on-going narcotics organization. The defendant was directly implicated in the receipt of several one-eighth kilogram quantities of heroin from this source in 1973. During the course of the proceedings which terminated in the Court's acceptance of his guilty plea on September 22, 1975, defendant acknowledged his personal receipt of approximately one-eighth kilogram of heroin from this organization. Furthermore, the proof at trial established that defendant sold two kilograms of almost pure cocaine to middlemen in this narcotics organization. The defendant was also knowingly instrumental in establishing contact between middlemen and new retailers of heroin.

At the time of sentencing defendant's co-conspirators we stated:

We have presided over trials involving the sale of substantial quantities of narcotics. Never, however, on a scale as extraordinary as this with its enormous quantities of heroin bought and sold on an almost daily basis. The activities of this group emphasize the overlords and regimental tiers of operation, all governed by tight maneuvers and bold enough to successfully avoid governmental detection of which they were constantly apprehensive and aware. Nor have the important operational details of their cruel enterprise come to light even at this late date. Let's face it. So inhuman, ruthless and cold blooded was their approach to the execution of their nefarious schemes that we sat aghast at the unfolding of the enormity of their horrifying indifference to life's values.

The holocaust of misery, the dreadful terminus of life for legions following the vast narcotic operations revealed herein too horrifying even to contemplate. [*U.S.A. v. Magnano et al.*, 543 F.2d 431, sentencing minutes at p. 52]

These comments apply with equal force to this defendant. Nothing in the presentence material is in contradiction. This background is offered to provide understanding of the factors that must be brought to bear in deciding defendant's motion to reduce his sentence.

In his moving papers, defendant singles out our observation at the time of his sentence that he lacked concern for others. In support of his position to the contrary, defendant submits letters from his son and sisters. Such supporting material is beside the point: it does not disprove what we stated at sentencing. Defendant's heavy commitment to, and long involvement in narcotic trafficking demonstrate his utter lack of concern for human beings outside his family.

He was indifferent to the ravages and suffering he helped inflict upon legions enslaved by narcotics. He was not deterred

by any thoughts that these suffering people also had families, that they loved and were loved by others, and that their lives and well-being were brutally smashed beyond rehabilitation by the narcotic traffic in which defendant participated.

We are not unmindful of the impact defendant's punishment will have upon his family. Too frequently, we sadly record, it is the family which most harshly suffers from the misdeeds of a defendant. Over decades of judicial service, we have painfully and repeatedly witnessed the unceasing misery and cruel hardships visited upon the family of a defendant sentenced to a substantial period of imprisonment. As with other factors, including his guilty plea, we make as much allowance for so throbbing a privation as is reasonable, always bearing in mind that justice must be done to defendant and accuser (community) alike. And so we did in this case at the time we imposed sentence.

It must be obvious that each human being tempted to commit crime has (among other decisions) a choice to make: whether to succumb and endanger (often beyond recall) one's family or resist and avoid disaster to them. Most, we venture to suggest, adopt the latter course.

The instant application is denied in its entirety.