**UNITED STATES of America,**

v.

**Andrew BUTZ, Defendant.**

**No. 79 Cr. 852 (IBC).**

United States District Court,
S. D. New York.

July 9, 1981.

**1168**

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States of America; Denise Cote, Asst. U. S. Atty., New York City, of counsel.

The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant; Steven Lloyd Barrett, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

In well-prepared papers supporting his application of May 14, 1981 pursuant to Rule 35, Fed.R.Cr.P., defendant Butz urges us to reduce the sentence we imposed upon

him on June 9, 1980. Applications which fall within the orbit of the remedy sought by this defendant are of extreme importance. While it is only natural for a defendant, convicted by plea or verdict, to seek relief of the burden or deprivation which a sentence imposes, his application must not be given short shrift.

### I

This court has had more than a nodding acquaintance with persons convicted of crime, the effects of different types of sentences imposed, the utilization of concepts of rehabilitation, the significance of cooperation with the Government, etc., etc.[1] During four decades of judicial service, we have tirelessly fought throughout the country for the application of extreme care and sensitive understanding to each sentence imposed. It must be recognized that

> Much harm is done by the myth that, merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine.... We are born with predispositions.... Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference.... Impartiality is not gullibility. Disinterestedness does not mean child-like innocence.

*In re Linahan, Inc.*, 138 F.2d 650, 651–54 (2d Cir. 1943) (Frank, C.J.)

Indeed, in the pursuit of our judicial mission, hardly a day passes without the forceful reminder of Mr. Justice Holmes (*The Common Law* p. 1) that "The life of the law has not been logic: it has been experience."

The indictment herein filed on November 29, 1979 contains three counts. Butz and his two co-defendants Panica and Rocco were charged in Count One with conspiring to distribute and to possess with intent to

---

1. See, e. g., *Pallatta v. United States*, 500 F.Supp. 612 (S.D.N.Y.1980); *United States v. Ochs*, 490 F.Supp. 1206 (S.D.N.Y.1980), *aff'd*, 636 F.2d 1205 (2d Cir. 1980); *United States v. Poynter*, 489 F.Supp. 604 (S.D.N.Y.1980); *United States v. Cachoian*, 440 F.Supp. 39 (S.D.N.Y. 1977); *United States v. Soldano*, 437 F.Supp. 85 (S.D.N.Y.1977); *United States v. Rannazzisi*, 434 F.Supp. 619 (S.D.N.Y.1977); *United States v. Rivera*, 434 F.Supp. 486 (S.D.N.Y.1977); *United States v. Unterman*, 422 F.Supp. 228 (S.D.N.Y.1976).

distribute heroin and methaqualone, in violation of Title 21, U.S.C. § 846. Counts Two and Three charged the three defendants with distributing and possessing with intent to distribute approximately 3,418 and 1,974 tablets of methaqualone on December 28, 1978 and April 13, 1979 respectively, in violation of Title 21, U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B).

The trial lasted nine days. By its verdict rendered on April 25, 1980, the jury found each defendant guilty on each count.

Prior to trial a second offender information was filed charging that Butz had been convicted on December 16, 1958 in the Southern District of New York of selling and conspiring to sell heroin; that he had been sentenced on that same day to a term of five years imprisonment on each count, the sentences to run concurrently.

The testimony of four agents of the Drug Enforcement Administration, two of whom worked in an undercover capacity, and an informant, together with tape recordings, established that the three defendants conspired to sell both heroin and methaqualone ("quaalude"); that they sold the 3,418 quaalude tablets for $6,000 and the 1,974 tablets for $2,000. On each occasion Butz was the source of the drugs sold to the undercover agents; Rocco assisted in their delivery and Panica made the actual transfers.

For good and sufficient reason, trial counsel for Butz was unable to continue after the rendition of verdict. At the defendant's request, counsel was appointed to represent him. He was sentenced as a second felony offender.

■ Butz's sole claim on appeal was that we abused our discretion by sentencing Butz before the trial transcript had been prepared and his new counsel had an opportunity to examine it, thus preventing "substantial argument" that Panica, not Butz, was the most culpable defendant. We observed at the time of sentence already considerably delayed that the transcript would take six weeks to prepare; that counsel had in his possession 3500 material and other vital data which covered the point quite vital data which covered the point quite, part] in a serious felony ... when you

exhaustively and clearly pointed up that his complaint was empty of substance.

As later revealed by the transcript, we were satisfied that the "substantial argument" would prove of no avail and denied the application, promising to correct the sentence imposed if counsel found that the transcript reflected anything helpful to his client in that regard.

It was a matter of discretion for the trial judge provided substantial prejudice to Butz was avoided. *Ungar v. Sarafite,* 376 U.S. 575, 589, 591, 84 S.Ct. 841, 849, 850, 11 L.Ed.2d 921 (1964); *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); *United States v. Ellenbogen,* 365 F.2d 982, 985 (2d Cir. 1966), *cert. denied,* 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967).

Butz's conviction was affirmed by our Circuit Court on December 4, 1980. On March 2, 1981, his petition for a writ of certiorari was denied.

## II

■ In support of the instant application, defendant again presses his position that he was not the most culpable of the defendants. At trial, the Government's meticulous preparation was reflected by the sharp delineation of the factual participation of each defendant in the narcotics operations with which the case dealt.

A judge who has presided over a lengthy trial *often gains an intimate insight into the circumstances of the defendant's crime,* which may prove uniquely useful in determining the sentence to be imposed, whereas no such reason would normally exist upon sentencing after a guilty plea. *United States v. Robin,* 553 F.2d 8, 11 (2d Cir. 1977) (*en banc*). (emphasis supplied)

At the time of sentence, we measured with care the extent of the participation in the narcotics operations of each of the three defendants and made our estimate known in open court. Rocco's role was subsidiary—a middleman and custodian of the drugs: "... [O]f the three you had the least to do with the operation... [he took part] in a serious felony ... when you

joined you knew damn well and good what you were doing." In mitigation, we took into account that Rocco had been depressed by the tragic death of his son, an event which "weighed heavily on you." The presentence report revealed that Rocco had been legitimately and steadily employed; no serious prior conviction. On him we imposed a sentence of eighteen months.

We recognized Panica's significant role in the conspiracy. We found him a "keen operator" who had formulated "plans, methods, operational steps in connection with the conspiracy." Although 72 years old at the time of sentence, with no serious prior criminal record, we were resolved not to give him "a little rap on the wrist." Panica received a sentence of five years.

We are convinced Butz was the most culpable of the three. He had two prior felony convictions for selling heroin, one of which took place in Federal Court in 1958 where he received a five year prison sentence. He was a member of a criminal organization engaged in illegal narcotics operations, and endeavored to establish a regular business relationship with undercover Special Agent Ferrarone of the Drug Enforcement Administration. He participated in plans which resulted in smuggling narcotics into the country and transporting drugs into New York. (Tr. 755–56).[2] He had both white and brown heroin for sale. (Tr. 728–29). Butz was the source of all the quaaludes which was the basis of the charges in the substantive counts. He negotiated with Ferrarone for the sale of a half kilogram of heroin for $66,000.

With commendable candor, counsel for Butz "put it on the line":

[Defendant served] in the Air Force from '48 to '52 receiving an honorable discharge. . . . Since then I would say he has probably gone downhill from there. He worked in a number of places, including a pornographic book store on 42nd Street, where he was repeatedly arrested, I think, some 15 times on vice raids. He

has been convicted of the sale of heroin, both in the New York State Courts and as well in the Federal Courts. He has been involved in bookmaking in New Jersey, and, frankly, there is very little that can be said for Mr. Butz in terms of how he has chosen to spend his life. (sentencing minutes, p. 31)

We reduced *substantially* a heavier sentence because of Butz's military service.[3] Our comment: ". . . there are . . . judges . . . [who] don't give any particular credit to a man who has served his country; they did it themselves; they feel it is an obligation, the fulfillment of which is its own reward—and they are right; but when a man with an ugly attitude towards life that you had does render a service to his country, and renders it honorably . . . it counts with me—it means a lot to me." (sentencing minutes pp. 35, 36)

We have considered all the contentions that Butz has to offer; we unhesitatingly repeat that he was the "main operator"— the most culpable of the three defendants before us.

### III

Concededly defendant has refused to cooperate with law enforcement authorities by providing incriminatory information as to the illegal drug operations of others. Up to this moment neither he nor his counsel advanced a single word of explanation for his silence. We recognize, and have always followed the doctrine (fortified by the maxim of fairplay) that it is wrong "to administer additional punishment to a defendant who by his silence has committed no additional offense." *United States v. Ramos,* 572 F.2d 360, 363 n.2 (2d Cir. 1978); *DiGiovanni v. United States,* 596 F.2d 74, 75 (2d Cir. 1979).

On the state of the entire record herein, supported by post-verdict proceedings, we could have taken into consideration, at the time we imposed sentence, this defendant's

---

**2.** "Tr." refers to Trial Transcript.

**3.** Butz was sentenced to a term of eight years imprisonment and six years special parole on each count, the sentences to run concurrently.

lack of cooperation. We did not do so to any extent whatever.

Our Circuit Court in *United States v. Bradford*, 645 F.2d 115 (2d Cir. 1981), considered an appeal wherein the sole claim was that the sentencing judge erred in taking into consideration along with other factors appellant's refusal to cooperate with law enforcement authorities. Bradford had entered a plea of guilty to charges of use of a telephone to facilitate distribution of a controlled substance, 21 U.S.C. § 843(b), and unlawful possession of cocaine, 21 U.S.C. § 844(a). Bradford refused to furnish the supplier's name because "I fear the consequences for other people if I were to do so. I do not want to put my family or myself in danger." At no time, before or after sentence, did Bradford furnish evidence or details, *in camera* or otherwise, in support of his statement. At sentencing the trial judge noted various factors considered by him and bearing on sentence: That Bradford was 47 years old, had a "strong motivation for greed ... corrupted [and] victimized" his two younger co-defendants and was the source of the cocaine and "the person with the most to gain from the plot ... refused to assist the Government's efforts to detect and prosecute the perpetrators of such large-scale criminal activity." The sentencing judge ruled that it was "appropriate ... to take into account this [latter] factor, along with other relevant considerations" in meting out sentence. The judgment of the district court was affirmed.

We entertain no doubt whatever that Butz, a thrice-convicted felon for narcotics selling, is unaware that, based upon the totality of his nefarious practices, the fact that he repeatedly "rejected an obligation of community life" (*Roberts v. United States*, 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980)), a longer sentence than the one we imposed was warranted. The substantial credit we allowed on sentence for his military service and the fact that the sentence did not in any wise include as a factor his failure to cooperate with law enforcement officials, reduced the sentence finally imposed to a considerable extent. Indeed, this particular case reminds us of Judge Friendly's observation in *United States v. Ochs*, 595 F.2d 1247, 1262 (2d Cir. 1979): "On the undisputed record disclosed in the pre-sentence report, the judge could reasonably have given Ochs an even higher total sentence than he did."

On the other hand, we have had frequent occasion to reduce (sometimes substantially) sentences we imposed, including "heavy sentences." Where the applicant (even a hardened offender) cooperated willingly and fully with the prosecuting authority and we were completely satisfied on that score, we have reduced the sentence. See *United States v. Garcia*, 544 F.2d 681, 682 (3rd Cir. 1976) ("[A] court may properly invoke its power to grant lenity to those who, having admitted transgressions against the sovereign, thereafter assist the sovereign in improving social order and the public welfare."); *United States v. Unterman*, 433 F.Supp. 647, 648 (S.D.N.Y.1977) ("Our determination to grant defendant's application and reduce his sentence is based upon [the fact that] we believe that defendant has made a genuine effort to cooperate with the Government .... [W]e believe credit should be given for the sincerity of defendant's attempts at cooperation.") In each instance we were convinced that without the defendant's extensive help, extremely active racketeers would continue their execrable practices without let-up. Very often, indeed, the information, the "leads," the secrets so revealed have brought serious offenders to account, with the usual result that convictions followed upon the thorough preparation of the facts and the law professionally presented by the determined prosecutor. See *United States v. Rivera, supra*, 434 F.Supp. at 492; *United States v. Rannazzisi, supra*, 434 F.Supp. at 622.

Thus, the commonwealth is the ultimate beneficiary of the prisoner whose efforts may well be regarded as truly praiseworthy and meaningful in his assistance to law enforcement officials in the investigation of crimes. We must add that, much to our surprise, we frequently learn (on such Rule

35 applications to reduce sentence) that the offender "came forward" and without promise of reward made his disclosures which proved of significant benefit to the community, and did so fully aware at all times that his life and limb were in danger.

This experience and scores of others, some of which we have had occasion to mention in the course of this opinion, enable us to discern the latent as well as the patent merits of the application before us. As we have already observed: "The life of the law has not been logic: it has been experience." (Mr. Justice Oliver Wendell Holmes)

### IV

Another point urged upon us by movant is the contemplated action by the Parole Commission in his case. This he accompanies with the plea that we reduce the sentence we imposed or modify it as provided by 18 U.S.C. § 4205(b)(2) so that the period of his imprisonment will be consistent with the judgment of the Parole Commission. We rest on the signed statement in our Report On Sentenced Offender dated June 11, 1980. Our answer to Comments And Recommendations Relative To Parole therein, reads: "We rely on the Parole Board's independent estimate of this defendant at the time his parole application is considered; that under its oath of office the Board will exercise sound discretion as to what is to the best interests of this particular defendant (his strength and weakness) and community alike."

### V

We now undertake to respond to the final contention advanced by counsel for defendant. He declares: "Mr. Butz's background, as well as his achievements while incarcerated, bespeak a strong and decent character and demonstrate that his prospects for complete rehabilitation are substantial. His release from prison at an earlier date would be of great importance to his family and would increase the likelihood that he will become a contributing member of society." (Affidavit, Steven Lloyd Barrett, Esq., verified May 14, 1981, p. 2).

We have reviewed all the proceedings heretofore had herein and find we cannot share counsel's optimistic assessment of the defendant's present and potential moral strength. As of today, what really are Butz's moral standards? His hatred of authority (an aspect of his disease), overwhelmingly established by a fair reading of his history, his alternate periods of self-pity and blame, are they all behind him now? Is he still morally immature? Is he prepared for life's challenges and has he the unwavering will to meet them because he has acquired the imperative capacity to do so?

In a word, how deep-seated and impervious to attack is his moral conviction for clean living founded on good morals? What assurance have we that he will not slip back—reinfect himself and infect still others? Is he unflagging in his determination to renounce to their face, and by neglect, his one-time buddies and "friends" of both sexes, and take on stricter and more demanding disciplines?

How do we go about certifying that the patient once dangerously ill is now on the way to complete recovery? The resolution of these pertinent questions, imperative if justice is to be done here to defendant and community alike, can hardly be undertaken on the woefully thin evidence—qualitatively and quantitatively—presented to us on this application.

We have searched in vain for meaningful evidence of true contrition by Butz. Nor is there even a murmur of a plea for forgiveness. Often we have witnessed offenders thrash about as they comment on the cause and the situation wherein their crimes had been incubated and matured; they expose and dissect their moral nature at the time of arrest; they demonstrate the perception and acknowledgement of fault, the will to make restitution, their acceptance of the community's moral sanctions. Not so with Butz.

We do not despair of the defendant's chances ultimately to achieve moral values that will enable him to climb to higher ground. In the main, that is up to him.

We do not say that his good marks while in present confinement have been solely to earn "credits" which will support his application for parole and entitle him to other benefits; such conduct may be coupled with a strong desire to "go straight." We simply do not know—so thin is the evidence before us. In view of what is known of the whole man before and since our sentence was imposed, satisfactory evidence of true rehabilitation and contrition, involving solidly embedded moral values that assure his own good moral living without danger to the community, should have been adduced—impressive testimony which might well have turned the tide in defendant's favor.

CONCLUSION

We are constrained to, and do, deny in all respects the application to reduce the sentence imposed.

SO ORDERED.