UNITED STATES of America ex rel. David Frank GOLDBERG, Appellee,

v.

WARDEN, ALLENWOOD FEDERAL PRISON CAMP, MONTGOMERY, PENNSYLVANIA, Appellant.

No. 79–2215.

United States Court of Appeals, Third Circuit.

Argued March 20, 1980.

Decided June 9, 1980.

---

Elliott Schulder (argued), William G. Otis, Dept. of Justice, Washington, D.C., Carlton M. O'Malley, Jr., U. S. Atty., Middle District of Pennsylvania, Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Middle District of Pennsylvania, Lewisburg, Pa., for appellant.

Daniel J. Kornstein (argued), Stewart L. Levy (argued), New York City, Richard S. Bishop, Gelb & Myers, Scranton, Pa., for appellee.

Renee D. Chotiner, Dennis E. Curtis, Stephen Wizner, Alice Bussiere, Legal Services Organization, New Haven, Conn., for amicus curiae Jerome N. Frank Legal Services Organization.

Before SEITZ, Chief Judge, and WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

As a result of a plea bargain, the prosecution dismissed certain counts of an indictment "with prejudice." Petitioner contends that as a consequence of that phraseology, the Parole Commission could not consider the conduct underlying those counts in deciding whether to grant parole on a related charge to which petitioner pleaded guilty. The district court adopted the petitioner's position, but we reject it and, consequently, vacate the order directing the Commission to conduct a new parole hearing. Because the petitioner may be relying upon other commitments made as part of the plea bargain, however, we remand for clarification of that issue.

Petitioner sought a writ of habeas corpus under 28 U.S.C. § 2241 in the district court alleging that the United States Parole Commission had improperly denied him release. The district court dismissed several of the claims but found meritorious the contention that in reaching its decision the Commission had improperly considered counts of an indictment that had been dismissed "with prejudice." The court directed the Commission to hold a new hearing, at which time only the charge to which petitioner had pleaded was to be evaluated.

Petitioner was indicted along with several others and charged with participating in a scheme to defraud the United States by delivering meat that did not meet contract specifications. After negotiations between his trial counsel and the government, it was agreed that petitioner would plead guilty to one count of an information charging a violation of 18 U.S.C. § 1001 (1976), concealment of a material fact. In return the government agreed "not to allocute for any particular sentence" but specifically reserved "its right to comment on the evidence against this defendant." In addition, the government was to "forego seeking any additional charges against said defendant in connection with his conduct in supplying meat to the Department of Defense, and at the time of sentencing will dismiss the counts in the indictment . . . with prejudice."[1] The agreement did not mention parole.

The petitioner pleaded guilty in the United States District Court for the District of Massachusetts to the one-count information. Before sentence was imposed, counsel acknowledged to the court that he had gone over the presentence report with petitioner, and said that there were no matters included that he wished to challenge. The presentence report, in the section captioned

1. The plea agreement was prepared on paper bearing petitioner's trial counsel's letterhead in the margin, and we assume from that fact that the draftsmanship was that of petitioner's lawyer.

"Official Version," noted that petitioner had pleaded guilty to a one-count information and described the scheme to supply the Department of Defense with inferior meat. The names of the other six participants were listed, along with a description of their roles in the affair, which included bribery of government inspectors. According to auditors quoted in the report, the government had been defrauded of "at least $1,468,951." Finally, the report contained a notation by the probation officer:

"Offense Severity Moderate

Parole Prognosis

If defendant is committed, he will serve between 12 and 16 months according to the U.S. Parole Commission Guidelines."

Petitioner received a prison term of four years and a $10,000 fine. All counts in the indictment pertaining to the petitioner were dismissed.

On May 4, 1978, after four months of imprisonment, the petitioner was given his initial parole hearing. The hearing examiner panel believed that the offense should be classified as "Greatest I" severity under parole guidelines promulgated by the Commission, 28 C.F.R. § 2.20 (1979), *as amended by* 45 Fed.Reg. 6379 (1980), because the government had been defrauded of a sum in excess of $500,000. Such a rating under the guidelines, when combined with the other factors, "would indicate a range of 40–55 months."[2]

Because the presentence report predicted a shorter incarceration period, the matter was referred to the Regional Commissioner for determination whether the sentencing court felt that "this case had guidelines of 12–16 months." In response to an inquiry from the Parole Commission, an Assistant United States Attorney in Massachusetts wrote that at the time of sentencing the court *did not mention the time* the petitioner would likely serve in prison. The letter went on to say that petitioner had request-

ed a reduction in sentence in early May, but that on May 19, 1978, the court had declined to alter its judgment. Thereafter, the hearing examiners and the Regional Commissioner agreed to continue the petitioner to the expiration of his sentence.

In February 1979 the National Appeals Board of the Parole Commission advanced the parole date because of the consideration given to a codefendant and told petitioner he would be eligible for release on March 19, 1980. At the same time, petitioner sought a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania, the area where he was then confined.

The habeas petition sought either an outright vacation or a reduction of the sentence, and, alternatively, a furlough so that petitioner could return to his family. Among the grounds for relief were that the Parole Commission, in considering information concerning the dismissed counts in the indictment, had breached the plea agreement, and that petitioner's health was in danger of irreparable harm because of the inadequate care available in prison.

The district court rejected the request for a reduction of sentence because of lack of jurisdiction and also refused the furlough request. The court found that despite the petitioner's allegation that he was simply a less culpable member of the scheme, the Parole Commission's denial of parole was not arbitrary or capricious; failure to exhaust administrative remedies precluded consideration of the claim of improper medical care.

The district court concluded, however, that it was "not proper for the parole commission to consider as an aggravating circumstance, *see* 28 C.F.R. § 2.20(d), counts of an indictment which have been dismissed with prejudice and for which there is no reliable evidence on the record." The Commission was directed to conduct a new hearing at which time petitioner's offense sever-

---

**2.** Under the guidelines, crimes are assigned a severity rating and placed into one of seven categories. Each prisoner is assigned a parole prognosis score on a scale of 0 to 11. The intersection of these two factors yields the anticipated time to be served in prison. 28 C.F.R. § 2.20 (1979), *as amended by* 45 Fed.Reg. 6379 (1980).

ity rating would be recalculated solely on the basis of the count to which he had pleaded guilty. Petitioner was later enlarged pending this appeal.[3]

In this court, the Parole Commission argues that it has broad discretion to consider the nature and circumstances of the offense and that matters apart from the count to which a plea is entered may be relevant to a parole determination. The petitioner renews his contention that the Parole Commission's consideration of counts dismissed with prejudice violated the plea agreement.

The district court did not determine whether there had been a plea agreement on parole, but took the closely related position that since the counts in the indictment had been dismissed "with prejudice," the Commission should not have considered them. The court recognized that a sentencing court could properly consider evidence of crimes of which the defendant had been acquitted, *e. g., United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972), but distinguished that situation because there the sentencing judge had heard the testimony.[4]

We must measure the district court's reasoning against the powers granted to the Commission by the Parole Commission and Reorganization Act of 1976 (PCRA), 18 U.S.C. §§ 4201–4218 (1976). Section 4203 gives the Commission the power to grant or deny parole and to promulgate rules and regulations establishing guidelines necessary to carry out the national parole policy. The general criteria for making parole determinations are found in § 4206, which provides that eligible prisoners may be released on parole if "the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines that . . . release would not depreciate the seriousness of his offense or promote disrespect for the law" and "would not jeopardize the public welfare." *Id.* § 4206(a)(1), (2). Section 4207 lists the material that the Commission may consider:

"(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) presentence investigation reports;

(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and

(5) reports of physical, mental, or psychiatric examination of the offender."

The section concludes that "such additional relevant information . . . as may be reasonably available" may also be reviewed by the Commission.

It is clear that the Commission is granted wide discretion to review material that would be helpful in its determination whether to release a prisoner on parole, a decision the Supreme Court has acknowledged is difficult. It is a "subtle [one which] depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 10, 99 S.Ct.

---

**3.** The petitioner has been enlarged since September 1979, months in advance of his parole date of March 20, 1980. The case, therefore, is not moot since he could be ordered to return in order to serve the remainder of his sentence. In view of our decision vacating the district court's order and remanding for possible further findings, we note that counsel for the Commission commented at oral argument that the petitioner will not be reincarcerated until his case has been reevaluated by the Commission.

**4.** There is considerable doubt that the Parole Commission, in fact, ever did review the dismissed counts of the indictment. The documents in the record suggest that the Commission received its information about the petitioner's offense only from the presentence report. The one-count information is also in the record, but we do not find the original indictment or any evidence that it was ever in the possession of the Commission. The government chose to defend the case on an *arguendo* basis, assuming that the petitioner's allegations were correct but denying their legal efficacy. Thus, we must meet the issues as addressed by the district court.

2100, 60 L.Ed.2d 668 (1979). The choice "involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice." *Id.* at 8, 99 S.Ct. at 2104 (footnote omitted).

The scope of information that the Parole Commission may consider, though perhaps statutorily not as expansive as that applicable to the sentencing judge, is nevertheless quite broad. The statute applicable to the sentencing court, 18 U.S.C. § 3577 (1976), places no limitation on information that may be received "concerning the background, character, and conduct" of the convicted defendant. We have held, for example, that under this statute a sentencing judge may properly consider allegations in a pending, untried indictment. *United States v. Metz*, 470 F.2d 1140 (3d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973); *see United States v. Garcia*, 544 F.2d 681, 684 (3d Cir. 1976).

In the parole context, Congress has authorized the Commission to view presentence reports, 18 U.S.C. § 4207(3) (1976), despite the knowledge that "[t]here are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged." *Gregg v. United States*, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969). Thus, in *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976), a pre-PCRA case, the court reasoned that if the sentencing judge may take into account offenses other than the one for which defendant was convicted, the Parole Board may use a presentence report to arrive at a severity rating. Similarly, in *Zannino v. Arnold*, 531 F.2d 687 (3d Cir. 1976), another pre-PCRA case, we held that reports linking a prisoner to large-scale organized criminal activity provided a sufficient basis for a Board determination to deny parole. Nothing in the new Act or its legislative history, curtails what could have been considered by the old Parole Board.[5]

In fact, the PCRA emphasizes consideration of the nature and circumstances of the offense. Before enactment of the Act, House and Senate conferees reconciled conflicts between the House and Senate bills. In their report, the conferees stated that it was their intent that the Commission review and consider both the nature and circumstances of the offense, and that in making each parole decision, the Commission should recognize and determine the relative severity of the prospective parolee's offense. In so doing, the Commission "shall be cognizant of the public perception of and respect for the law." H.Conf.Rep.No.838, 94th Cong., 2d Sess. 25, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 335, 358. This inquiry was made explicit in the statute itself. 18 U.S.C. § 4206. It is against this background, therefore, that we must decide if the Commission improperly considered the dismissed counts.

■ In its opinion, the district court emphasized that the counts were dismissed "with prejudice." The plea agreement, however, did not in any way link this phrase to the question of parole, nor did it restrict the scope of the presentence report. On these matters the agreement was completely silent. Even at time of sentencing, after the presentence report had been examined by defense counsel, there was no request or suggestion that because these counts were dismissed with prejudice the report should not be reviewed by the Parole Commission.

---

5. By regulation, the Commission has provided that it "shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless reliable information is presented that was not introduced into evidence at such trial (e. g., a subsequent admission or other clear indication of guilt.)" 28 C.F.R. § 2.19(c) (1979).

We find nothing in the record to establish that the "with prejudice" language was to have any effect on the scope of the presentence investigation or, more specifically, prohibit its disclosure to the Parole Commission. In this report, as we noted earlier, the details of the scheme and the amount of money allegedly involved are included. It is this information that apparently is also contained in the dismissed counts of the indictment or is the conduct to which they refer.

Petitioner seems to take the position that without any clarifying language, the use of "with prejudice" is understood to require that those counts, and the conduct to which they refer, be treated as if they had never existed. But the petitioner has not demonstrated that such a restrictive interpretation is common in plea bargaining.

■ In negotiating for a plea, the defendant has a very real interest in limiting the number of counts to which he is exposed for the obvious reason that the total length of time to which he can be sentenced is reduced. It would be of little benefit to him if those same counts could be included in a new indictment, and so it is generally understood that if on a plea bargain charges are dismissed, they will not be revived. Should the government reinstitute the counts in a new indictment, the defendant could invoke the agreement as a defense under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Accordingly, the common understanding is that in the absence of contrary expression, counts dismissed as a result of plea bargaining are "with prejudice."

In this case, the addition of the phrase added nothing but certainty to the terms of the plea bargain and insured that the petitioner would not again be charged with the same crime. The clause did no more than express what would otherwise have been implied. Nothing in the terminology sug-

gests that it has any ramifications that would affect parole consideration or that would restrict the presentence report. Nor do the parties cite any decisional law to that effect. We conclude that, standing alone, the phrase "with prejudice" does not bar comment in the presentence report about the charges in the dismissed counts and does not prevent consideration of that conduct by the Parole Commission in weighing all the factors bearing on the nature of the offense and the prisoner's character as well.[6] Inasmuch as it relied solely on that terminology for validity, the district court's order must be vacated.

■ As an independent basis for relief, amicus curiae contends that the Commission's almost total reliance on the presentence report in arriving at a parole determination denied petitioner an individualized consideration. This, in turn, touches upon the concerns addressed in our decision in *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir. 1978), *aff'd on other grounds*, —— U.S. ——, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In *Geraghty*, we suggested that a wooden application of parole guidelines to arrive at the parole determination could usurp traditional judicial control over the sentencing process.

In this case, however, there is no doubt that petitioner's parole determination took into account factors peculiar to him. The Commission took steps to insure that the sentencing judge's wishes were ascertained and complied with by forwarding an inquiry to the United States Attorney's Office in Massachusetts. Only after the response was received did the Commission set parole. This concrete example of considering factors peculiar to the particular prisoner negates any argument that petitioner received nothing more than a mechanical application of the parole guidelines. We therefore conclude that petitioner's parole determination complied with our dictates in *Geraghty*.

---

6. The one count information to which petitioner pleaded charged him with covering up that he had misrepresented the quality of meat that he was supplying to the government and that he was making regular cash payments to government inspectors who were to inspect his

company's production. The extent of the fraud being "covered up" and the amount of cash given to the inspectors obviously would have a bearing on the severity rating attributable to the offense charged in the information.

We also reject an alternative argument advanced by the amicus that the "arbitrary" reliance on the presentence report violated a Commission regulation requiring that parole determinations be made upon a "preponderance of the evidence." 28 C.F.R. § 2.19(c) (1979). That same regulation goes on to state that "the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability." *Id.* In this regard, we think it significant that after he had been given the opportunity to review the report, and before sentencing, petitioner did not challenge any of the factual matters included. Both the sentencing judge and the Parole Commission, therefore, were entitled to assume that the factual information in the report was correct. Conceding that in some instances an overreliance on the presentence report may hinder an impartial and a just decision, we find nothing in this record to suggest that the information received by the Commission here was inaccurate.

■ Because of the procedural posture of the case when it was decided by the district court, however, we are unable to resolve all the issues at this time. The petitioner has alleged that the plea bargain incorporated the government's agreement not to use the allegations of the dismissed counts in considering eligibility for parole. A failure by the government to observe a promise with respect to parole recommendations may constitute a breach of a plea bargain. *See Cohen v. United States*, 593 F.2d 766 (6th Cir. 1979). Although the plea agreement on its face does not link the dismissal to parole recommendation or consideration, the record is not clear if petitioner is raising a factual issue concerning the government's representations in addition to his interpretation of the phrase "with prejudice." If so, the matter must be resolved in the first instance by the district court. We will remand to the district court, therefore, to determine if there is an issue remaining, and, in that event, to decide the matter. If there are no further factual matters to be developed, however, the court may then dismiss the petition.

Accordingly, this case will be remanded to the district court for further proceedings consistent with this opinion.