**UNITED STATES of America, Plaintiff,**

v.

**Herbert BAYLIN, Defendant.**

**Cr. A. No. 81–22.**

United States District Court,
D. Delaware.

March 26, 1982.

Irving Morris and Kevin Gross of Morris & Rosenthal, P.A., Wilmington, Del., Nathan Lewin, Thomas B. Carr and James E. Rocap, III, of Miller, Cassidy, Larroca & Lewin, Washington, D. C., for defendant-petitioner.

Joseph J. Farnan, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., for plaintiff-respondent.

## OPINION

LATCHUM, Chief Judge.

At issue in this case is what information a court may permissibly consider in formulating an appropriate sentence for a convicted defendant, and the extent to which the government, through a plea agreement, may impose restraints on the information which a court may otherwise properly receive prior to sentencing. Herbert Baylin has filed a second petition for habeas corpus relief under § 2255 on the ground that the court which imposed sentence upon him erroneously relied upon: (1) unfavorable information transmitted to the court by the pre-sentence report, in violation of the plea agreement which he negotiated with the government; and (2) factually incorrect assumptions about the petitioner's involvement in other criminal activity which were inferred from the plea agreement itself. Petitioner argues that he is entitled to have his sentence vacated and to be resentenced by a different judge, who has not been privy to the derogatory information contained in the pre-sentence report and who will draw no negative inference from the terms of the plea agreement.[1]

1. Baylin initially filed a motion for correction and reduction of sentence pursuant to Rule 35, F.R.Cr.P., or alternatively, for habeas corpus relief pursuant to 28 U.S.C. § 2255, arguing that the court which accepted his guilty plea failed to advise him of certain essential consequences of the plea and the sentencing court thereafter failed to implement fully the terms of the plea agreement. Petitioner did not request that his plea be vacated, but instead sought "specific performance" of the plea agreement, which, under his calculations, would have insured his release from prison after serving six months of the three year sentence imposed. In an opinion dated February 9, 1982, 531 F.Supp. 741, this Court rejected the legal grounds for relief outlined in Baylin's petition. The Court recognized, however, that Baylin might be able to make out a claim that his guilty plea was not voluntarily entered because it was induced by affirmative misrepresentations by either defense counsel or the government that Baylin would receive an early parole. Because petitioner had not expressly sought vacation of his plea, the remedy traditionally employed to re-

dress involuntary pleas, the Court offered Baylin the opportunity to seek this relief in an amended petition and to there assert in greater detail the facts underlying the alleged misrepresentations concerning his parole date. In response to this order, on February 26, 1982, Baylin filed an "Amended Application to Vacate Sentence pursuant to 28 U.S.C. § 2255," the application presently before the Court. In this "amended application," Baylin's attorneys state that he has elected not to seek vacation of his guilty plea on the conditions specified in this Court's opinion of February 9. Instead, Baylin now alleges two new defects in the proceedings under which he was sentenced, which purportedly warrant an order setting aside his sentence and allowing resentencing before another judge. Although this amended application does not satisfy the terms for amendment specified in the Court's order and is essentially a separate and independent petition, the Court in its discretion will treat the application as an amendment in order to expedite resolution of this controversy.

## I. *Facts*

On May 20, 1981, petitioner and the United States entered into a written plea agreement under which Baylin agreed to plead guilty to a one count Information charging him with participation in the preparation of a false corporate income tax return, for fiscal year ending April 30, 1976, in violation of 26 U.S.C. § 7206(2). (Docket Item ["D.I."] 3.) In addition, in return for his guilty plea and full cooperation with the government in other outstanding investigations, the United States agreed "to remain silent and to make no recommendations (including a recommendation that a period of incarceration be imposed upon the Defendant) as to the nature and length of sentence, if any, to be imposed by the Court . . . ." (D.I. 3 at 2.) The United States further promised "to decline prosecution of any and all offenses committed by the Defendant," other than the offense which was the subject of the Information, in any manner relating to: (1) the violation of the tax laws of the United States involving any year in or for which a return was filed by the R. Baylin Company or the defendant; (2) the illegal diversion of foreign shipments into the United States; and (3) the theft or receipt of, or dealing in, stolen goods. (D.I. 3 at 4–5.) On the same date that the plea agreement was signed, Baylin appeared before the Court, the guilty plea was entered, and the plea agreement was accepted pursuant to Rule 11, F.R.Cr.P. (D.I. 12.)

About one month before Baylin's sentencing date, the Probation Office transmitted copies of the pre-sentence report to the sentencing judge, the prosecutor and defense counsel. Baylin's attorney, in turn, forwarded a copy of the report to Baylin for his review. The report contained considerable information concerning Baylin's personal and family background, medical history, and financial condition, and described in detail his participation in the filing of the false corporate income tax return for fiscal year ending April 30, 1976, the charge to which he pled guilty. In addition, the report revealed that Baylin had participated in the preparation of two additional fraudulent corporate income tax returns for fiscal years ending April 30, 1975 and April 30, 1977, neither of which was the basis for additional prosecution. The information on these latter two offenses apparently was obtained by the Probation Office from Internal Revenue Service investigative reports. It is undisputed that evidence of these additional criminal tax evasion schemes was not part of the record in the case and had not heretofore been disclosed either to the judge who accepted the guilty plea and approved the plea agreement, or to the sentencing judge.

On July 22, 1981, Baylin was sentenced to a term of imprisonment of three years and a fine of $5,000, the maximum penalty allowed under law for the offense charged. In explaining its decision to impose this sentence, the Court remarked:

> [I]n considering sentence, under my oath of office, I am duty bound to consider the offense for which you were convicted, as well as the aspects of your background which may reveal a darker side of your character. Indeed, 18 United States Code, Section 3577 provides no limitations shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive for the purpose of imposing an appropriate sentence.

> You stand convicted of willfully aiding, counseling and advising the preparation of a federal corporation income tax return for the R. Baylin Company, of which you are, I understand the sole owner for fiscal year ending April the 30th, 1976 which was false, in overstating corporate business expenses by $242,876, thereby causing an underpayment of additional taxes due and owing of $116,100.48.

> This tax evasion case and the deliberate and intentional and fraudulent scheme by which it was perpetrated is the worst such case that I have seen in the almost thirteen years that I have sat on the bench. Furthermore, this does not appear to be an isolated incident. The Internal Revenue Service investigation indi-

cates that the same scheme was repeated for fiscal years ending April 1975 and April, 1977, with the result that the corporate business expenses for those years were overstated by an additional better than half-million dollars, thereby causing an additional underpayment of taxes for those two years of better than $241,000. The Court also takes note of the fact that the Government has agreed in the plea agreement that you will not be prosecuted for any other tax offense which you have committed except for the one which you entered a plea of guilty to, and that you will not be prosecuted for your involvement in diverting foreign shipment of goods or for any offense committed by you relating to the receipt of stolen goods. The Court, of course, may take judicial notice that these grants of immunity for other possible federal violations reflect adversely upon your character.

(D.I. 13 at 14–16.)

No contemporaneous objections were made by Baylin to either the information contained in the pre-sentence report, or the contents of the Court's remarks at the sentencing hearing, which evidenced those factors which the Court had considered in imposing sentence. In his amended application to vacate sentence, filed some seven months after the sentencing hearing, Baylin now argues: (1) that the government breached its duty under the plea agreement "to remain silent and to make no recommendation" as to the nature and length of sentence to be imposed, by making derogatory information contained in IRS investigative reports available to the probation officer for inclusion in the pre-sentence report to the Court; and (2) the Court im-

properly drew adverse inferences from the prosecutor's agreement not to prosecute Baylin on certain other offenses and thus based the severity of the sentence on legally impermissible factors. Baylin contends that either of these flaws presents independent grounds for vacating his sentence. Moreover, because the sentencing court could not realistically ignore the mental impressions formed after consideration of these factors and now render an unbiased decision regarding sentencing, he argues that resentencing must be before another judge.[2]

## II. *Pre-Sentence Report*

When a guilty plea is induced to any significant degree by a promise or representation of the prosecutor, that promise ordinarily must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Generally, an unqualified promise to remain silent *and* to make no recommendation as to any possible sentence which may be imposed requires the prosecutor to say nothing to the judge which would adversely influence the sentencing decision.[3] *United States v. Avery*, 589 F.2d 906, 908 (C.A. 5, 1979); *United States v. Crusco*, 536 F.2d 21, 26 (C.A. 3, 1976). Clearly then, if the prosecutor in this case had directly apprised the Court, either at the sentencing hearing or prior thereto, of Baylin's participation in the filing of the two additional false corporate income tax returns, the plea agreement unquestionably would have been breached. *United States v. Avery, supra*, 589 F.2d at 908; *United States v. Crusco, supra*, 536 F.2d at 26.

The facts of this case are not so straightforward. The government at no time, ei-

---

**2.** The new sentencing judge apparently would be provided with an excised version of the pre-sentence report, which would contain no reference to the two additional false corporate income tax returns filed by the R. Baylin Company and Baylin's participation in the preparation of these returns.

**3.** In this Circuit, if the prosecutor agrees to make no recommendation as to the sentence to be imposed, he is barred only from suggesting

an appropriate term of imprisonment. Unless he also specifically agrees to take no position or to remain silent at the sentencing hearing, however, he is not prohibited from commenting on the defendant's background or activities, or any other aggravating factors, with a view towards influencing the severity of the sentence. *United States v. Miller*, 565 F.2d 1273, 1275 (C.A. 3, 1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978).

ther prior to the sentencing hearing or at the hearing itself, directly conveyed any detrimental information concerning the petitioner's character or past activities to the Court. The government did, however, make its investigative files available to the Probation Office, thus squarely raising the question of whether the government's promise to remain silent carried with it any implied agreement to refrain from providing information to the Probation Office, which, through the pre-sentence report, could act as a conduit for disparaging information. *See United States v. Avery, supra,* 589 F.2d at 908. If the plea agreement were so construed, Baylin would be entitled to relief. *See United States v. Cook,* 668 F.2d 317 (C.A. 7 1982). Because this is essentially a factual question which cannot be determined as a matter of law, further development of the record is necessary.[4] *See United States v. Avery, supra,* 589 F.2d at 908.

Before engaging in the time-consuming task of conducting an evidentiary hearing on that issue, however, one significant hurdle must be surmounted: the question of what relief would be appropriate if the agreement to remain silent was breached in this case. Baylin argues that under established law, if the facts alleged in his petition are true, the government must be held to its commitment and he is entitled to specific performance of the agreement— that is, vacation of his sentence and resentencing before a different judge who has not been tainted by the disclosures contained in the pre-sentence report. Implementation of this remedy, however, would require the government to withhold relevant information from the sentencing court, a result which is irreconcilable with current penological goals. Thus, two basic principles are on collision course in this controversy: first, the requirement that the government strictly adhere to the terms of a nego-

tiated plea agreement; and second, the necessity for the sentencing court to have complete and accurate information concerning the defendant's character, and past activities, in order to make an informed sentencing decision. After careful consideration of the policies underlying both principles, the Court concludes that any agreement to withhold information necessary for an enlightened sentencing decision must give way to the more compelling interests served by full disclosure to the sentencing court and is thus void as against public policy. Accordingly, a plea induced by such an unfulfillable promise may be vacated and the defendant given the opportunity to plead anew; specific performance of the agreement, however, could not permissibly be granted.

It has long been recognized that not every transgression of a single state or federal statute calls for an identical sentence, but instead, "the punishment should fit the offender and not merely the crime." *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). This critical variation on W.S. Gilbert's solemn prose emerged in the past few decades as part of a reform movement which sought to displace retribution as the guiding sentencing principle with the more enlightened concepts of reformation and rehabilitation. *United States v. Grayson,* 438 U.S. 41, 46, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). A major result of this movement was the development of an individualized and flexible approach to sentencing which allowed judges to formulate release dates based on several factors peculiar to each sentencing situation, including a defendant's potential for rehabilitation or likely recidivism. *Id.*

Crucial to this concept of individualized punishment was the requirement of full disclosure of all information concerning the perpetration of the crime and the defendant's personality and past activities, with-

---

4. Of course, the fact that both Baylin and his attorney reviewed the pre-sentence report prior to sentencing and made no objection to its contents until seven months later is persuasive evidence that the agreement to remain silent did not encompass a tacit understanding to

withhold pertinent sentencing information from the Probation Office. If Baylin desires an evidentiary hearing, within the guidelines of this opinion, it will be his burden at this hearing to demonstrate that the government violated the terms of the plea agreement.

out which an informed sentencing decision could not be made. Accordingly, in a long line of decisions, the principle evolved that prior to imposing sentence a "judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). This fundamental policy of full disclosure was codified and expanded, moreover, by the Congress in 18 U.S.C. § 3577, which provides that no limitation may be placed on information concerning a defendant's background, character or conduct which a court may receive and consider for the purpose of an appropriate sentence.

Drawing from the wide breadth of § 3577, the courts have consistently rebuffed challenges both to the substance of information which was considered by a sentencing court and the procedural process by which the data was received. It is now well settled that, subject to very few limitations, a court has almost unfettered discretion in determining what information it will hear and rely upon in sentencing deliberations. For example, a court may appropriately consider allegations in a pending untried indictment, *United States ex rel. Goldberg v. Warden, Allenwood Federal Prison Camp*, 622 F.2d 60, 64 (C.A. 3), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980); *United States v. Metz*, 470 F.2d 1140, 1142 (C.A. 3, 1972), *cert. denied sub nom. Davenport v. United States*, 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973), information concerning crimes for which the defendant had been indicted, but was neither tried nor convicted, *United States v. Doyle*, 348 F.2d 715, 721 (C.A. 2), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965), and, in some cases, evidence with respect to crimes of which the defendant had been acquitted, *United States v. Plisek*, 657 F.2d 920, 927 (C.A. 7, 1981); *United States v. Sweig*, 454 F.2d 181, 184 (C.A. 2, 1972); *see United States v. Metz, supra*, 470

F.2d at 1142. In addition, there are very few due process constraints on the manner in which the information is obtained and then relayed to the court. Thus, the court may consider illegally obtained evidence, *United States v. Lee*, 540 F.2d 1205, 1211–12 (C.A. 4), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Schipani*, 435 F.2d 26, 28 (C.A. 2, 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971), and hearsay evidence, *United States v. Garcia*, 544 F.2d 681, 684 (C.A. 3, 1976), and is not obligated to afford the defendant either the opportunity to confront and cross-examine the witnesses supplying the disparaging information or the use of legal process to rebut any allegations as to past activities made by the prosecutor or the Probation Office. *Williams v. New York, supra*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

The chief mechanism for gathering information about the defendant is the pre-sentence investigation conducted by the Probation Office,[5] the results of which are recorded in a pre-sentence report submitted to the court. Under Rule 32(c), F.R.Cr.P., a presentence investigation and report are required in all cases except where special circumstances, not relevant to this case, exist. This report must contain "any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant ...." F.R.Cr.P. 32(c). The importance of a complete and accurate pre-sentence report has been underscored by the Supreme Court:

> Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sen-

---

**5.** The Probation Office is under the general control of the respective district court which it serves, and is thus considered an arm of the court. *See* 18 U.S.C. §§ 3654, 3655.

tence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. *Williams v. New York, supra,* 337 U.S. at 249–50, 69 S.Ct. at 1084.

It is thus obvious from the various judicial and legislative pronouncements on this issue, that full disclosure to the court of information concerning the defendant's involvement in the offense, as well as any background and character data, is an essential component of the sentencing process which cannot be bargained away by the government. Although the government may relinquish any right it may have to *recommend* an appropriate sentence as part of the plea bargain negotiations, it "does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court," because this silence impinges upon the court's ability to impose a fair sentence. *United States v. Block,* 660 F.2d 1086, 1092 (C.A. 5, 1981). Accordingly, an agreement to withhold information from the Probation Office, and by extrapolation, the court, would exceed the perimeter of discretion vested in the prosecutor and could not be enforced. *Id.* at 1092; *see United States v. Michaelson,* 552 F.2d 472, 475 (C.A. 2, 1977); *United States v. Needles,* 472 F.2d 652, 654–55 (C.A. 2, 1973).

Specific performance of an agreement to withhold information from the sentencing court would be particularly undesirable, moreover, in this case where the information sought to be excised from the pre-sentence report reflects evidence of other criminal culpability on the part of the defendant. "Few things could be so relevant [to a sentencing judge] as other criminal activity of the defendant." *United States v. Metz, supra,* 470 F.2d at 1141, *quoting United States v. Doyle,* 348 F.2d 715, 721 (C.A. 2), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). Obviously, sharp distinc-

tions must be drawn between first and repeated offenders and between situations where extenuating circumstances played a motivating role in a single criminal act and where the offense was part of a recurring fraudulent scheme with no mitigating elements. *See Williams v. New York, supra,* 337 U.S. at 248, 69 S.Ct. at 1083. An agreement which operated to suppress such evidence of the propensities of the defendant, as witnessed through his prior conduct, would likely produce an incongruous sentence and make a mockery of the entire sentencing process.

Thus, considering the purposes underlying full disclosure of all pertinent data to the sentencing court, as well as the particular circumstances of this case, the Court concludes that if the plea agreement was in fact breached by the government, the appropriate remedy would be to allow Baylin to withdraw his guilty plea. This decision places Baylin in a posture similar to that confronting him after his original petition for habeas corpus relief was disposed of by the Court. In that first petition, as in this "amended application," petitioner sought only correction or reduction of his sentence and expressly refused to request vacation of his plea as an alternative remedy. After concluding that grounds might exist for a claim that the plea was not voluntarily entered and that the only relief for this potential defect was vacation of the plea, the Court offered Baylin the opportunity to seek withdrawal of the plea in an amended petition. This offer was declined. Because Baylin and his counsel may still believe that it is not in his best interest to have the plea vacated and the plea agreement struck, the Court will again afford Baylin the opportunity to elect this relief. An amended petition expressly requesting vacation of the guilty plea, accordingly, must be filed in a time to be set by the Court in order for an evidentiary hearing on the construction of the plea agreement to be held. Otherwise Baylin's amended application to vacate sentence will be denied. An amended petition, if filed, must strictly observe the conditions outlined in this paragraph and may only

indicate that the petitioner desires to have his plea vacated. No new arguments or requests for additional relief may be raised in this amended petition or will be entertained by the Court.[6]

### III. *Agreement Not to Prosecute*

As a separate and independent ground for setting aside his sentence, Baylin argues that the sentencing court improperly relied upon adverse inferences drawn from the government's agreement not to prosecute him on certain other offenses. Specifically, Baylin objects to the Court's comment that these "grants of immunity for other possible federal violations reflect adversely upon your character," on the ground that an assumption of possible wrongdoing cannot permissibly be deduced from an agreement not to prosecute. Accordingly, because his sentence was founded in part on incorrect factual speculation, Baylin contends that he is entitled to be resentenced by a different judge who will draw no negative inference from the terms of the plea agreement.

As this Court has previously discussed in great detail, a court is vested with broad discretion in determining what factors it will consider in imposing sentence. The exercise of this virtually unlimited discretion, however, imposes on the court a corresponding duty to insure that the information relied upon is essentially accurate. A sentence cannot be predicated on materially incorrect information, *see United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct.

589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), or information so unreliable or untrustworthy that it would be unfair to proceed on the basis of that evidence. *Moore v. United States*, 571 F.2d 179, 183 (C.A. 3, 1978).

No such misinformation or unreliable data was presented to the Court in this case. *Roberts v. United States*, 445 U.S. 552, 557, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980). It is undisputed that the government agreed as part of the plea agreement not to prosecute Baylin on any offenses arising from the diversion of foreign shipments, the theft or receipt of, or dealing in, stolen goods, or the violation of the tax laws of the United States.[7] This unqualified agreement, which is tantamount to a grant of immunity from prosecution, certainly gives rise to a permissible inference that Baylin *may* have participated in certain of these illicit activities. In all likelihood, such a provision would not have been incorporated into the plea agreement if there was absolutely no danger that Baylin would somehow be linked to these additional offenses. In fact, it is clear that Baylin did participate to some unspecified degree in the filing of additional false corporate income tax returns, not charged in the Information, in violation of the tax laws of the United States.[8] This observation, in itself, undercuts Baylin's claim that the agreement not to prosecute presented no valid, supportable or rational basis for an

---

**6.** Under Rule 9 of the Rules Governing Section 2255 Proceedings, a second or successive motion brought under this section may be dismissed, even though new grounds for relief are alleged, if the judge finds that the failure of the movant to assert those grounds in a prior motion constituted an abuse of the procedure governed by the rules. Although petitioner's amended application asserts new grounds for relief than those alleged in the original petition, it is based on facts known at the time the original petition was filed and could have been consolidated with the prior petition. The Court will henceforth look askance at any successive motions filed by Baylin which are based on facts which could have been raised in one of these prior motions.

**7.** The government also promised as part of the plea agreement that it would not prosecute the R. Baylin Company, R. B. Co. Enterprises, Inc., or certain present or former employees of the R. Baylin Company on any offenses arising from these same subject areas. (D.I. 3 at 5–6.)

**8.** Baylin apparently does not challenge the Court's consideration of that portion of the plea agreement in which the government agreed not to prosecute him on any other violations of the tax laws. Baylin argues only that consideration of the assurances not to prosecute in the areas of diversion of foreign shipments and stolen goods was in error. Thus, by implication, even Baylin concedes that the negative inferences drawn by the Court from the immunity agreement were partially correct.

assumption that the defendant ever engaged in the activities embraced by the agreement.

Moreover, contrary to Baylin's contention, by considering the agreement not to prosecute as one of many factors in its sentencing deliberations, the Court did not "assum[e] that Mr. Baylin had committed offenses in the area of 'diverting foreign shipment of goods' or 'receipt of stolen goods,'" and thus usurp a function primarily reserved for the jury. The Court expressly noted that this agreement covered "*possible* federal violations" and concluded only that an immunity grant such as this "reflect[ed] adversely upon [Baylin's] character." Thus, the Court did not presume from the immunity grant that Baylin had actually engaged in additional misconduct, but instead inferred only that such involvement was possible, and thus a negative reflection on Baylin's character, a conclusion that is not so inconceivable as to constitute "misinformation of constitutional magnitude." *United States v. Tucker, supra,* 404 U.S. at 447, 92 S.Ct. at 592.

Baylin points to a letter written by the Assistant United States Attorney on September 25, 1981 to the Parole Commission as support for the proposition that no adverse conclusions could permissibly be drawn from the agreement not to prosecute. In this letter, which was written at the request of Baylin's counsel in support of an application for early parole submitted on Baylin's behalf, the prosecutor states: (1) that the United States never intended to prosecute Baylin on any charges involving the theft of, receipt of, or dealing in, stolen goods due to insufficient evidence, and that "this provision was added to the [plea] agreement as a protection to Mr. Baylin without objection by the United States"; (2) that Baylin was not a target of an

ongoing investigation into illegal diversion of foreign shipments and no criminal charges were lodged against him or his company; and (3) that, accordingly, the sentencing court's emphasis on the agreement not to prosecute Baylin on any potential violations arising from these activities "was unfortunate," and "no negative inference" should be drawn by the Parole Commission concerning these provisions. (D.I. 26, ex. B.)

This letter, which was written after the sentencing hearing and thus was not before the Court at the time of sentencing, does not alter the propriety of considering the challenged information. The fact that there may have been insufficient evidence to indict Baylin on a charge of dealing in stolen goods, or that he was not a formal target of an ongoing investigation into the illicit diversion of foreign shipments, and no criminal charges were brought against him or his company as part of this investigation, does not divest the agreement not to prosecute of its relevancy to the sentencing decision. These factors do not conclusively establish that Baylin was not involved in any way in the aforementioned activity, but only that there was insufficient evidence to bring formal charges. The Court's terse comment that the immunity grant was essentially a negative consideration is not inconsistent with anything contained in the Assistant United States Attorney's letter.[9]

The Court concludes that its consideration of the agreement not to prosecute Baylin on certain other possible violations of federal law, as one element in its sentencing deliberations, was not in error. The petition for habeas corpus relief pursuant to § 2255, insofar as it rests on this contention, will be denied.

---

**9.** Even if the Court were to concede that its reliance on the agreement not to prosecute was in error, the remedy proposed by Baylin to cure the flaw would in all likelihood be ineffective. Resentencing before another judge would not eliminate the danger that negative inferences would be drawn from the plea agreement. Any judge faced with the agreement not to prosecute would likely infer that Baylin may have participated in these criminal activities or the immunity grant would have been unnecessary. Short of excising the agreement not to prosecute from the plea agreement itself, a task which could not legally be undertaken, there would be no practical method of insuring that the prosecutor's promise was not treated as a negative factor.

IV. *Release on Bail Pending Decision*

■ Baylin has also requested the Court to issue an order releasing him on bail pending disposition of his amended application to vacate sentence and/or pending appellate review of this Court's decision on the amended application. Although this Court has inherent power to grant release pendente lite, *Baker v. Sard*, 420 F.2d 1342, 1343 (C.A.D.C.1969); *Johnston v. Marsh*, 227 F.2d 528, 531 (C.A. 3, 1955), this power must be used sparingly. Release is appropriate only when "the petitioner has raised substantial constitutional claims upon which he has a high probability of success and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Calley v. Callaway*, 496 F.2d 701, 702 (C.A. 5, 1974); *see Aronson v. May*, 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964) (Douglas, J., on application for bail pending review); *Ostrer v. United States*, 584 F.2d 594, 596 n. 1 (C.A. 2, 1978). Upon examination of the record in this case, the Court concludes that neither factor in this two-fold test has been demonstrated and release on bail is not justified. *See Calley v. Callaway, supra*, 496 F.2d at 703.

*Conclusion*

For the reasons discussed in this opinion, Baylin's amended application to vacate sentence pursuant to 28 U.S.C. § 2255 will be denied. Petitioner will be granted leave, however, to amend his application to request vacation of his guilty plea in accordance with the criteria outlined in this opinion. If this amendment is filed, an evidentiary hearing on the proper construction of the government's agreement to remain silent and to make no recommendation as to the nature and length of sentence to be imposed by the Court will be held.

An order will be entered in accordance with this opinion.