

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-2002

# USA v. Covert

Precedential or Non-Precedential:

Docket No. 01-3098

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Covert" (2002). *2002 Decisions*. Paper 273.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/273

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-3098

UNITED STATES OF AMERICA

v.

LEE A. COVERT,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 00-cr-00248
District Judge: Hon. Yvette Kane

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 8, 2002
Before: McKee, Barry, Circuit Judges, and
Alarcon, Senior Circuit Judge

(Filed: April 15, 2002)

OPINION OF THE COURT

McKee, Circuit Judge.

The defendant appeals from the sentence of incarceration which was imposed following his plea of guilty to violating the Migratory Bird Treaty Act, 16 U.S.C. 703. For the reasons that follow, we will affirm.

Inasmuch as we write only for the parties, we need not set forth the facts underlying this appeal except as maybe necessary to our brief discussion. The defendant first claims that the sentencing court committed legal error by imposing a sentence that was, at least partially, the result of the government's letter writing campaign. However, the record is devoid of any conclusive support for the defendant's allegation that the Fish and Wildlife service, or any other governmental agency, instigated or orchestrated the letter writing campaign which the defendant complains of. The Assistant United States Attorney handling this matter has denied this allegation both in the district court and in his brief to us, and that denial goes unrebutted. Moreover, we note that sentencing courts may properly "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [that may be considered] or the source from which it may come." United States v. Baylin, 535 F.Supp. 1145, 1151 (D.Del. 1982), remanded on other grounds 696 F.2d 1030 (3d Cir. 1982). The court's ability to consider such information is circumscribed only by considerations of due process including considerations of the accuracy of information considered when imposing a sentence. United States v. Harris, 558 F.2d 366, 373 (7th Cir. 1977).

Given the emotional nature of the symbol which the defendant admitted slaying and mutilating, it is not the least bit surprising that members of the public were outraged by his conduct and moved to write letters of protest to the sentencing court. Although the sentencing court would have had the discretion to ignore such sentiment in imposing sentence had it chosen to, the law clearly did not require her to do so.

Although the defendant attempts to attack the accuracy of the letters that were written and alleges instances of plagiarism and mere copying of form letters from a website, the government points out without contradiction in its Brief, that the letters contained only a single inaccuracy which was subsequently corrected by the author of

that letter sending a second letter clarifying her own independent opinion. That was done without resort to any form or website. See Appellee's Brief at 14. Moreover, although the defendant's sentence was not insubstantial, we note that many, if not most of the persons who wrote letters to the sentencing court asked the court to impose the maximum sentence allowable for the defendant's conduct. The defendant's sentence was substantially less than the maximum sentence that could have been imposed. Accordingly, it is easy to see that although the sentencing court considered the letters that were written on this matter of public interest, it did not surrender its own independent discretion in determining the sentence.

Defendant attempts to elevate his challenge to the sentence that was imposed, the strict liability requirements of the statute which he violated, and the numerous letters that were sent, into an argument that his sentence was unconstitutional and that he was denied the due process of law. This argument is based at least in part upon the defendant's assertion that the strict liability statute has never been affirmed by the U.S. Supreme Court and that the resulting imprisonment implicates "grave damage to a defendant's reputation" thereby raising due process concerns. See Appellant's Brief at 25 citing United States v. Engler, 806 F.2d 435 n.5 (3d Cir. 1986). However, even assuming that injury to one's reputation based upon a correct determination of guilt could somehow rise to level of a due process violation, it is clear that any damage to defendant's reputation arose from his own criminal conduct, and the cruelty it embodied, and not from the sentence that was imposed. It is indeed ironic that the defendant would assume that any embarrassment caused his family results from the fact that he was sentenced to 100 days imprisonment and not from the fact that he took it upon himself to kill and mutilate a Migratory Bird which many in this society hold to be symbolic of the history and traditions of this country.

Accordingly, for all the reasons set forth herein, we will affirm the conviction and judgment of sentence.

TO THE CLERK:

Please file the foregoing opinion.

By the Court
/s/ Theodore A. McKee
CIRCUIT JUDGE